[Civil No. 3675. Filed April 6, 1936.]

[56 Pac. (2d) 188.]

MASSACHUSETTS BONDING AND INSURANCE COMPANY, a Corporation, Appellant, v. ARIZONA CONCRETE COMPANY, a Corporation, Appellee.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. W. L. Barnum, for Appellee.

LOCKWOOD, C. J.—Arizona Concrete Company, a corporation, hereinafter called plaintiff, brought a suit setting up two causes of action against Massachusetts Bonding and Insurance Company, a corporation, hereinafter called defendant, to recover certain sums of money which plaintiff claimed were due it under the provisions of a certain public liability insurance policy issued by defendant in favor of plaintiff. The case was tried to the court, sitting without a jury, and judgment was rendered in favor of plaintiff, whereupon this appeal was taken.

In order that we may pass properly upon the issues raised by the assignments of error, it is necessary to make a brief statement of the material facts of the case, and in doing so, we must, of course, interpret the evidence as strongly as is reasonably possible in support of the judgment. Plaintiff was a

building contractor, and about the 1st of January, 1931, entered into a subcontract with the American Concrete Pipe Company, a corporation, hereinafter called the pipe company, for the construction of certain water and sewer mains near the city of Phoenix. On the 9th day of January, plaintiff secured from the defendant a contractor's public liability policy for the term of one year. This policy contained, among other things, the following clauses:

"1. To indemnify the assured against loss from the liability imposed by law upon the assured for damages on account of bodily injuries and/or death accidentally suffered or alleged to have been suffered, during the period of this policy, by any person or persons not in the employ of the assured, while at or about the work of the assured described in statement 3 of the schedule, by reason of and during the progress of said work at the location set forth in said statement 3.

"2. To serve the assured, upon notice of such bodily injuries or death, by investigation thereof or by such negotiation or settlement of any resulting claims as may be deemed expedient by the company; and to defend, in the name and on behalf of the assured, suits brought on account of such claims, whether or not they are groundless, unless or until the company shall agree to effect settlement thereof.

"3. To pay, in addition to damages, all expenses incurred by the company for investigation, negotiation or defense; all costs taxed against the assured in any legal proceeding defended by the company; and all interest accruing after entry of judgment on the part of such judgment for which the company is liable.

. . .

"E. Upon the occurrence of an accident, the assured shall give immediate written notice thereof to the Company's Home Office at Boston, Massachusetts or to its duly authorized agent. If any claim is made on account of such accident, the assured shall give like notice thereof with full particulars. If thereafter, any suit or other proceeding is instituted against the assured to enforce such claim, the assured

shall immediately forward to the company at its home office every summons or other process served upon him. Notice given by or on behalf of the assured to any authorized agent of the company within the state in which this policy is issued, with particulars sufficient to identify the assured, shall be deemed to be notice to the company, it being understood that failure to give any notice required to be given by this policy, within the time specified therein, shall not invalidate any claim made by the assured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.''

It did not, however, provide any specific penalty for a failure to give the notices above provided for. It is admitted that this policy, by its terms, covered the Franklin and Orr cases hereinafter referred to. The first cause of action is based on the following facts: On the 20th day of May, 1931, one Pearl Franklin notified plaintiff that she had received injuries while crossing an excavation made by it in pursuance of its contract. Plaintiff immediately notified J. A. Godwin, the agent of defendant, from whom it had secured the policy, by telephone of the claim, and on the 23d day of May mailed an unregistered notice thereof to him. Immediately after receiving this notice, Godwin transmitted the information to B. F. Hunter, manager of the Arizona Adjustment Agency, through whom defendant had been in the habit of adjusting claims under its policies which originated in and around Phoenix. The pipe company, the original contractor, carried public liability insurance with the Pacific Indemnity Company, and its adjuster, J. A. Rouse, having in some manner learned of the accident, looked into the matter, and among other things, gave Hunter a report as to the results of his investigation. Hunter, on the 2d of June, sent an employee of his agency,

one Frank R. Kleinman, to S. B. Shumway, plaintiff's manager, and the question was discussed between Kleinman and Shumway, Kleinman claiming and Shumway denying that the latter had during this discussion stated the Pacific Indemnity Company, and not defendant, was responsible for any damages sustained by Franklin. On the 14th of July, Franklin filed suit against plaintiff, service being made on Shumway, who took the summons and complaint to his attorney, W. L. Barnum, and told him to take care of the matter. Thereafter, and on the 4th of August, Hunter called upon C. M. Vanderford, the president of plaintiff, and asked him to sign a statement releasing defendant from any liability, Hunter stating, in substance, that the defendant was not liable, but that they desired an admission of this fact from Vanderford so that they could close their files. Vanderford refused to sign, stating that he never signed any legal papers without consulting his attorney. Hunter again, on the 14th of August, made the same request of Vanderford, and received substantially the same reply. Nothing further was done as between plaintiff and defendant until the 6th of January, 1932, but in the interim plaintiff took all necessary steps to defend the suit of Franklin, and proceeded to trial thereon. The result was a mistrial, for reasons not appearing in the record, and the case was again set for trial on January 7, 1932. On January 6th, plaintiff, for the first time, formally demanded, in writing, that defendant defend the Franklin case, and delivered to it all the pleadings therein. Defendant denied any liability and refused to defend the action on the ground that it had not been notified of the accident and suit, as required by the policy. The case went to trial on the next day and resulted in judgment for plaintiff and against Franklin. The

expense incurred by plaintiff in defending the Franklin suit amounted to $770.60, and it is admitted by defendant that if it is liable at all, under the circumstances above set forth, this is the correct amount which it should be required to pay as a result of the first cause of action.

The second cause of action is based on a different set of circumstances which may be summarized as follows: On the 17th day of May, 1931, one Nellie Orr claimed to have received an injury while crossing certain excavation done by plaintiff under its subcontract, at a different place from where the accident was alleged to have occurred to Franklin. So far as the record shows, Orr gave no notice of this accident to any person until the 21st day of July, 1931, when she filed suit against plaintiff and the pipe company. The summons and complaint were served on the same day, and delivered to plaintiff's attorney, W. L. Barnum. No notice of this matter, oral or written, was given to defendant until January 6, 1932, plaintiff proceeding to defend the suit through its own attorney and in its own manner. On that date it did, however, give written notice of the proceedings to defendant, accompanied by all the pleadings in the case, and called upon it to defend. This, defendant declined to do, giving the same reason as it had in the Franklin case. At that time, the status of the Orr case was that there had been an original, a first and second amended complaint filed, and proper answers made on behalf of plaintiff herein by its attorney, but the case had not been tried and, as a matter of fact, was not tried until some two months later. The result of this trial was a judgment against plaintiff which, together with its necessary costs incurred in defending the action, amounted to $1,756.24. Defendant does not question that if it is liable at all

in the Orr case, on this state of facts, this is the correct amount for which judgment should be rendered against it. Thereafter, this suit was brought for recovery of the amount expended by plaintiff as a result of the Franklin and Orr claims, as aforesaid.

The sole defense interposed in this action is that because of the failure of plaintiff to give immediate written notice of the claims of Franklin and Orr when they were called to its knowledge, and because of its failure to immediately deliver to defendant the pleadings of the plaintiffs in these two actions as they were received by it, that it was released from any liability on its policy.

So far as the Franklin case is concerned, the evidence shows that plaintiff first learned of the claim on the 21st of May, 1931, and gave defendant notice thereof the same day by telephone, and two days later in writing. We must, therefore, assume that proper notice was given in the first place. It did not, however, deliver to plaintiff the original complaint filed on the 14th day of July, nor the supplemental pleadings filed some time later, until January 6, 1932, nearly six months after the filing of the original complaint. As an excuse for its conduct, it claims that defendant, through its agent Hunter, had on the 4th day of August, and later on the 14th, in effect notified plaintiff that it disclaimed any liability in the Franklin case, and it is the contention of plaintiff that this relieved it from the necessity of giving any further notice, and that it was entitled thereafter to defend the action as best it could on its own account, and recover from defendant the costs thereof.

So far as the Orr case is concerned, plaintiff does not contend that any notice thereof was given as required by the terms of the policy, either immediate

or within a reasonable time after it had notice of the claim, but it urges (a) that the attitude of defendant in regard to the Franklin case, in disclaiming liability thereon, carried over to the Orr case, so that it was entitled to defend the latter case on the same ground as the Franklin case, and (b) that even if this be not true, its notice given on the 6th day of January, under all the circumstances of the case, was sufficient to establish liability on the part of defendant.

■ There have been many instances where questions as to the effect of failure to give notice of an accident, as required by the terms of a public liability policy, have come before the courts of the various states. The leading case in Arizona is *Watson* v. *Ocean A. & G. Corp.*, 28 Ariz. 573, 238 Pac. 338, 340. In that case the language of the policy in regard to notice was, if anything, even stronger than and very similar to that of the policy herein, but, like the present case, there was no provision as to the effect of failure to give such notice. Therein we stated as follows:

"Its [defendant's] real contention as appears from its brief, is that notice was not given of the loss as required by the policy, and therefore, under its terms, no liability exists. The policy requires that on the occurrence of an accident plaintiffs must give 'immediate written notice thereof to the company, with the fullest information obtainable. He shall give like notice with full particulars of any claim made on account of such accident. . . . ' No written notice was given for 91 days after the accident, though oral notice thereof was given to Mosshammer immediately. Now while 'immediate notice' in a clause like this has been construed to mean a varying period of time in accordance with the circumstances of the case, we do not think any court would go so far as to hold 91 days came within the phrase. What, then, was the effect of such failure?

"Insurance policies are invariably prepared by the insurer, and are therefore construed most strongly against it, and especially so when an alleged forfeiture for failure on the part of the insured to perform a condition subsequent is concerned. [Citing authority.]

"If the failure to give notice as provided for in the policy is expressly made a ground of forfeiture, of course the plain language of the contract governs, and generally, though not in all jurisdictions, there can be no recovery when giving of the notice, in time and manner as specified in the policy, is made a condition precedent to liability. [Citing cases.]

"But, where there is no such express provision in the policy, the failure to make proof in the time required thereby merely postpones the time of bringing suit, and, if notice and proof are subsequently served, the insured may recover, provided, of course, the time specified in the policy within which the action may be brought has not expired. [Citing cases.]

"We have read the insurance policy in question in this case carefully, and can find therein no provision which we think brings it within the first rule, and we therefore hold the failure to give notice for 91 days did not of itself bar recovery on the policy.

"The notice of accident and also of suit, as required by the policy, was actually given January 9, 1923, and on January 15, defendant in writing repudiated all liability under the policy, assigning no reason therefor. This relieved plaintiffs from the requirement of complying with any further conditions subsequent, and authorized them to settle the suit on the best terms possible, and to recover under the terms of the policy, including their reasonable expenses and attorney's fees, notwithstanding the settlement had not been made by or with the approval of defendant. [Citing cases.]"

We are of the opinion that, applying the law above laid down to the facts of the Franklin case, plaintiff was entitled to assume that defendant had, on the 4th of August, repudiated liability under its policy

for that accident, and was, therefore, entitled to proceed with the defense of the case as best it could.

So far as the Orr case is concerned, the circumstances are somewhat different. We think the contention of plaintiff that the repudiation of the Franklin case should be imputed to the Orr case cannot be sustained. It might well be that defendant, while denying the liability for one accident, might have accepted it for the other if the latter had been called promptly to its attention, and if this were the only point for consideration, we should hold that defendant was not liable on the second cause of action. It appears, however, that long before the trial of the Orr case, plaintiff did give full notice thereof to the defendant, and called upon it to defend the action. We think that the Watson case, *supra,* lays down the principle that a failure to give notice within the time required does not of itself relieve the company issuing a public liability policy from liability thereon, *unless it appears that it was prejudiced by such failure.* When, therefore, notice was given it on the 6th day of January, in order to avoid liability on its policy on account of the delay in giving notice, it must show affirmatively that it was prejudiced thereby. The notice was given in ample time for it to prepare for a trial of the case, or to make a compromise settlement thereof, if it desired, for the trial was not held for nearly two months after the notice. The only way in which it could have been prejudiced by the delay in notice was by a theory of the case having been developed on account of the pleadings of plaintiff herein which was not satisfactory to the insurer, or, an inability to make proper and timely investigation of the facts. There is nothing in this record to show that either situation had arisen. For aught that appears in the record, the case, when notice was given to

defendant insurer, was in precisely the same condition that it would have been had notice been given immediately on the filing of the first complaint. Had defendant accepted notice on January 6th, and proceeded with the case, there could have been no recovery by plaintiff for its expenses in maintaining the action up to that time, but when the former denied any liability on the sole ground of a failure of timely notice, without any claim that it had·been injured by the delay, we think that it was a waiver of any claim that it had been actually damaged by such delay. Bonds of this nature should be construed fairly in accordance with their terms, and we will not rewrite them for the benefit of either party, but neither will we sustain a claim of forfeiture for failure to comply with their conditions subsequent, unless the contract itself expressly so provides, or it appears affirmatively that such failure has damaged the insurer.

For the foregoing reasons, the judgment of the superior court is affirmed.

McALISTER and ROSS, JJ., concur.