**AMERICAN HOME ASSURANCE COMPANY, a New York corporation, Plaintiff,**

v.

**Martin SAND et al., Defendants.**
**No. Civ. 4442–Phx.**

United States District Court
D. Arizona.

Nov. 3, 1965.

On Motion for New Trial Jan. 6, 1966.

Amended Judgment April 11, 1966.

Rex H. Moore, William R. Jones, Jr., of Jennings, Strouss, Salmon & Trask, Phoenix, Ariz., for plaintiff.

Leroy W. Hofmann, Kenneth S. Scoville, Mark Wilmer, of Snell & Wilmer, Phoenix, Ariz., for defendant.

MUECKE, District Judge.

This is a declaratory relief action brought by American Home Assurance Company which had issued a garage keeper's policy on or about December 19, 1959, to Joseph F. Chavers who owned Joe's Paint and Body Shop in Glendale, Arizona.

Chavers owned a 1960 DeSoto which was primarily his family car but was used occasionally in his business to pick up parts, run errands and as a "loaner." During 1960 Chavers decided to sell the car and employed Robert Haile who, on a number of occasions, had sold cars for Chavers and who worked as a salesman for State Motor Sales, a used-car lot next door to Joe's Paint and Body Shop. Haile had also, on a number of occasions, found cars for Defendant Donald Perry who was engaged in business as a wholesaler of used autos and who paid Haile $25.00 each time Haile found an automobile for him. In fact, Haile had acted as a go-between or as co-agent for Chavers and Perry on a number of prior occasions. Haile informed Perry of the 1960 DeSoto

and brought him to Chavers' body shop some time prior to the date of the accident in question. Chavers said he wanted $2700.00 for the car. Perry offered $2500.00. On September 15, 1960, Chavers informed Haile that he would accept Perry's offer of $2500.00. Haile so advised Perry, who first told Haile that he would pick up the car himself, but then changed his mind and told Haile to pick up the vehicle for him and that he would give him a $2500.00 draft for Chavers when the car was delivered. Chavers agreed to this arrangement and brought the car to Haile late in the afternoon so that the transaction could be completed. However, Haile stopped to have a few beers and did not deliver the car immediately. Following this, he was involved in the accident that resulted in the injuries to Martin Sand and Peter Traxler on the evening of September 15, 1960.

Chavers heard nothing about the accident until he read about it in the newspaper the day after the accident, and having heard from neither Haile nor Perry, he picked up his DeSoto, repaired it in his own body shop at a cost to him, at his own estimate, of over $300.00 which he never charged to Perry. Chavers later sold the car to Don Perry for $2400.00, $100.00 less than the original price agreed upon.

On the date of the accident, Chavers still held record title to the vehicle, still owed $2700.00 to the Valley National Bank which held a record lien on the vehicle and physical possession of the title papers. Following the accident, he filed a claim as owner of the vehicle with his own insurance company, State Farm Mutual, for the cost of repairing his vehicle and was repaid as owner for such loss.

Sand and Traxler filed separate lawsuits in the Arizona state courts against Chavers, Haile and Perry for damages.[1] The Sand case was tried and the jury returned a verdict against Haile and Perry and in favor of Chavers. The Traxler case was also tried and the jury

---

1. The remainder of this paragraph has been amended by the order of January 6, 1966, infra.

rendered a verdict against defendants Haile and Perry but in favor of Chavers.

The following are the five issues presented for the Court's determination.

1. Did the accident arise out of the hazards as defined in the insurance contract?

2. Did the named insured own the vehicle at the time of the accident?

3. Is lack of notice a valid policy defense under the circumstances of this case?

4. If there is coverage, to whom does it extend?

5. Did there exist any conflict of interests violative of Canon 6 in the litigation of this matter in the state courts, and if so, what effect, if any, does this conflict have on the coverage questions?

## Hazards

■ The language of the Automobile Garage Liability Policy issued by plaintiff to Joseph Chavers in connection with the operation of his business is such that this accident falls within the hazards as they are expressly defined in the policy.[2]

The facts of this case are such, the Court finds, that there is no doubt of the use of the automobile by Joseph Chavers and his agents in connection with his business.

While the automobile in question was used primarily as a family car, there is a definite pattern in the way Joseph Chavers bought, repaired, used, and sold cars, including the 1960 DeSoto, that indicates he occasionally sold cars he personally owned in addition to his regular business of repairing, remodeling and painting automobiles owned by others.

In connection with his regular business, the 1960 DeSoto was used as a "loaner" to individuals who had left their cars with Chavers to be repaired. Both he and his brother, Clyde Chavers, also drove the car to work on occasion, and used the car to pick up parts and to write estimates on wrecked vehicles.

Finally, on the day the accident in question occurred, the 1960 DeSoto was

2. Defendant's summary of the pertinent provisions of the policy covers the subject well, and the Court sets it out in full:

"Plaintiff's policy defines 'insured' * * * as:

"1. The named insured (and any partner, director, stockholder, etc.).

"2. Any person while using an automobile covered by the policy

And

Any person legally responsible for the use thereof.
Provided the use is by named insured or with his permission (omnibus clause).

"Plaintiff's policy of insurance defines the 'hazards' covered as follows:

"1. The ownership, maintenance or use of the premises for an:
a. Automobile Sales Agency
b. Repair Shop
c. Service Station
d. Storage Garage
e. Public Parking Place

And

All operations necessary or incidental thereto.

And

"2. The ownership, maintenance or use of any automobile in connection with the above defined operations.

And

"3. The:
a. Occasional use for other business purposes.

And

b. Use for non-business purposes.

Of:

1) Any automobile owned by (or in charge of) the named insured and used principally in the above defined operations.

And:

2) Any automobile owned by the named insured 'in connection with' the above defined operations for the use of:
a) Named insured (or partner or executive officer)

Or:

b) A member of the household of any such person."

brought by Joseph Chavers to Robert Lucas Haile to drive, with Chavers' permission, to Donald Perry for the purpose of selling the car.

We can say therefore that the 1960 DeSoto was used in connection with and was a necessary operation incidental to the business of Joseph Chavers' repair shop. "To own a vehicle 'in connection with' service station operations means only that its ownership must be related to or associated with the service station operations, without any necessary connotation that the primary or only purpose of ownership or use of the vehicle be for such service station use." Keenan v. Wactor, La.App., 130 So.2d 800 (1961).

█ It was also an automobile owned by the named insured, Joseph Chavers, which was used for non-business purposes, i. e., as a family car, and was used at the time of the accident for other business purposes, i. e., selling it to Perry.

### Ownership

The Court is also of the view that Chavers owned the vehicle at the time of the accident. The following facts support this conclusion.

█ After the accident Chavers exercised dominion and control over the car, took possession, made repairs at his own expense, made a claim with his insurance company and then sold the vehicle to Perry for $100.00 less than the original agreed-upon price.[3] Furthermore, Chavers could not sell the vehicle until he could obtain clear title in himself, and in this case, record title resided in the Valley National Bank who retained control over the title papers. In addition, Chavers himself admitted he owned the car. He stated on cross-examination that Haile "had an accident with *my* car * * *." Therefore, the conclusion is inescapable that Chavers owned the vehicle at the time of the accident.

### Notice

█ The Court is of the view that there exists no valid policy defense with respect to lack of notice in this case. The facts are uncontradicted that the first notice of the accident which was received by the insurer was given by one of the attorneys for Defendant Sand, in a telephone call to a Mr. Miller, an independent adjuster, about three months after the accident. Mr. Miller in turn gave notice to the plaintiff. The policy in question specifically provides:

"10. Notice of Accident: When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents *as soon as practicable*. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses." (Emphasis added)

"14. Action Against Company— Coverages A, B, and D: No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, * * *."

Construing the policy most strongly against the insurer, the provision "no action shall lie against the company unless * * *" has no application in this case since the defendants have not brought this suit.

██ In any event, the phrase "as soon as practicable" is not an exact time such as a fixed period would be and the Court therefore finds that three months is not an unreasonable length of time under the circumstances of this case, especially where Chavers either might not have had knowledge of the existence of coverage or might have labored under a mistaken belief of his lack of liability for the accident when he was not driving the vehicle himself at the time of the accident.[4] In addition, the plaintiff insurer has admitted that the lapse of 90 days proved to be no hardship or prejudice to it, even though plaintiff takes

---

3. The following sentence has been amended by the order of January 6, 1966, infra.

4. The following sentence has been amended by the order of January 6, 1966, infra.

the position that prejudice or the lack of it is immaterial. In any case plaintiff was ultimately successful in defending Chavers.

▉ Furthermore, neither Haile nor Perry procured the policy, Chavers did, and there is no showing that either of them knew of its existence so as to make them responsible for giving notice to plaintiff.

"An additional insured could not be expected nor required to give notice before he knew of the existence of the policy or of the fact that he was covered thereby." 8 Appleman, Insurance Law & Practice, § 4738, p. 54 (1942).

Any question concerning notice, therefore, should not affect either Haile or Perry.

With regard to whether or not prejudice to the insurer is an issue in the matter of untimely notice, State Farm Mutual Auto Insurance Company v. Palmer, 237 F.2d 887, at 891 (9th Cir. 1956), offers a helpful analogy although the facts are not precisely the same. The Court stated: "We find no Arizona case squarely in point deciding the question whether or not prejudice need be shown where the performance of the condition is called a condition precedent in the policy. * * * but all cases and authorities appear to be in agreement that the non-cooperation must have been material."

▉ Consequently, the Court finds that the notice given here three months after the accident did not have any material adverse affect on the insurer's ability to defend the case, and therefore it cannot raise this policy defense.[5]

Since no policy defense exists for failure to give notice for reasons already expressed in this opinion, the effect of the plaintiff's failure to deny coverage following receipt of notice of the accident need not be explored here. In this respect the language of A.R.S. § 28–1142 reads:

"D. Upon receipt of notice of the accident, the insurance company or surety company which issued the policy or bond shall furnish for filing with the superintendent a written notice that the policy or bond was not in effect at the time of the accident, if such was the case. *If no such notice is received, the policy* or bond *shall be deemed to be in effect* for the purposes of this chapter."[6] (Emphasis added.)

In two previous cases decided by two different District Judges in this District, it was held in each case that an insurance company was estopped from denying coverage, having failed to comply with the statute (A.R.S. § 28–1142, subsec. D) above by denying coverage after receiving notice of the accident where its policy was involved.[7]

### Coverage

▉ The Court thus finds that coverage exists with respect to Chavers. It also exists with respect to Haile, the driver, by virtue of the omnibus clause since he was operating the vehicle with the permission of its owner, the named insured, Chavers.

Coverage also extends to Perry, the prospective purchaser, because not only was Haile acting as an agent of Chavers for whom he was to deliver the car, but also he was the agent for Perry who asked him to pick up the vehicle and deliver it to him.

In other words, the fact that there is coverage becomes clearer if we were

---

5. See: Massachusetts Bonding & Ins. Co. v. Arizona Concrete Co., 47 Ariz. 420, 56 P.2d 188, at 192 (1936), wherein the Arizona Supreme Court stated: "We think that the Watson Case, supra, lays down the principle that a failure to give notice within the time required does not of itself relieve the company issuing a public liability policy from liability thereon, unless it appears that it was prejudiced by such failure."

6. See: Stephenson v. Millers Mutual Fire Ins. Co., 236 F.Supp. 420 (D.C.Ariz. 1964)

7. Although not published these cases and the decisions are available in the files of the Clerk of the Court. English v. Truck Insurance Exchange, No. Civ. 2907 Phx., and Hardware Mutual Casualty Co. v. Barrett, No. Civ. 3239 Phx.

to imagine that at the time of the accident Perry were driving the vehicle rather than Haile, but under the same circumstances as to ownership, namely, that Chavers still owner the car.[8]

Therefore, when Haile, an agent of the prospective purchaser, was driving, it was as if Perry were driving the vehicle, and consequently, under the doctrine of respondeat superior, coverage extends to Perry since the master is liable for the torts of his servant.[9]

### Conflict of Interests

It is not necessary to determine the question raised concerning the possible conflict of interest because the case has been decided on other grounds. However, it must be stated that an attorney who represents a client at the same time he represents the defendant's insurance company, as occurred in this case,[10] raises the question of violating Canons 6 and 37 of the Canons of Professional Ethics.

"When counsel, although paid by the casualty company, undertakes to represent the policyholder and files his notice of appearance, he owes to his client, the assured, an undeviating and single allegiance. * * * His duty to the assured is paramount. The Canons of Professional Ethics make it pellucid that there are not two standards, one applying to counsel privately retained by a client, and the other to counsel paid by an insurance carrier. Canons 6, 45, Appendix, McKinney's Judiciary Law. If the interests of the carrier and the assured are, or are likely to become diverse, he cannot represent both. 'Divided obligations in trust relations are obnoxious to the law, and in none more so than in that of attorney and client.' " American Employers Insurance Co. v. Goble Aircraft Sp., 205 Misc. 1066, 131 N.Y.S.2d 393 (1954).

That this question could be an issue in this case is apparent when we consider that it was in the interests of the plaintiff insurer to defend Haile and Chavers on the theory that the vehicle involved was sold at the time of the accident to Perry, and secondly, to develop its case on the theory that Haile was acting on behalf of Perry and not for Chavers.

This Opinion shall constitute Findings of Fact and Conclusions of Law pursuant to Rule 52(a), Federal Rules of Civil Procedure. The prevailing parties are directed to submit a form of Judgment in accordance with this Opinion within five days of its receipt. Plaintiff may object to the proposed form of Judgment within five days after it is lodged.

### ORDER

#### On motion for new trial

The motion of plaintiff, American Home Assurance Company, for new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, having been argued and submitted, and the Court having duly considered the same,

It is hereby ordered that plaintiff's motion for new trial is denied.

However, plaintiff's alternative motions for new findings of fact and conclusions of law and for entry of a new judgment in this matter are hereby granted with respect to plaintiff's grounds numbered 4, 5, 10, and 12, and denied as to the rest.

8. See: United States Fidelity & Guaranty Corp. v. Myers Motors, Inc., 143 F.Supp. 96 (W.D.Virginia 1956); Eggerding v. Bicknell, 20 N.J. 106, 118 A.2d 820 (1955).

9. See: Neel v. Indemnity Ins. Co. of North America, 122 N.J.L. 500, 6 A.2d 722 (1939) and Stone v. Arizona Highway Comm., 93 Ariz. 384, 381 P.2d 107 p. 133 (1963), wherein the Arizona Supreme Court stated, that: "Employers or principals, individual, corporate or governmental, are responsible for the tortious wrongdoing when committed by agents and employees acting within the scope of their employment."

10. These comments concerning conflict of interests do not apply to any of the attorneys who tried this case before this Court and who are presently the attorneys of record.

The Court finds that plaintiff's liability is limited to the amount of the policy, i. e., $50,000 per person and $100,000 per accident, plus costs. In determining whether American Home Assurance Company is liable for the portion of the judgments in excess of the policy limits, the law appears to be well settled that there must exist bad faith in refusing to defend. The conduct that generally demonstrates bad faith is a refusal by the insurer to accept an offer of settlement within the policy limits. Thus, to find bad faith more is required than a mere failure to defend. Mannheimer Bros. v. Kansas Casualty & Surety Co., 149 Minn. 482, 184 N.W. 189, 191 (1921); Comunale v. Traders & General Insurance Co., 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883 (1948); and American Fidelity Fire Insurance Co. v. Johnson, Fla.App., 177 So.2d 679 (1965).

There was no evidence presented and no issue raised with respect to a refusal by the plaintiff to accept an offer of settlement within the policy limits, nor any evidence presented or issue raised with respect to bad faith, indicating that none of the parties considered this to be an issue in this lawsuit, and therefore the issue of bad faith is not decided in this case.

Further, it is hereby ordered that the Opinion of this Court dated November 3, 1965, is modified in the following manner:

1. Lines 11–15, page 3, shall now read:

"The Sand case, Cause # 126077 in the Superior Court of the State of Arizona in and for the County of Maricopa, was tried and the jury returned a verdict on April 17, 1963, in the amount of $65,000, plus costs and interest, against Haile and Perry, but in favor of Chavers. The Traxler case, Cause # 127100 in the Superior Court of the State of Arizona in and for the County of Maricopa, was also tried and the jury returned a verdict on April 22, 1965, in the amount of $75,000, plus interest and costs, against Haile and Perry, but in favor of Chavers."

2. Lines 2–6, page 7, shall now read:

"Furthermore, Chavers could not sell the vehicle until he could obtain clear title in himself. In this case there is a conflict in the evidence with respect to whether Chavers or the Valley National Bank had physical custody of the title documents. In any event, Chavers had the legal title in his name and the Valley National Bank held a lien of record on the vehicle at the time of the accident in question."

3. Lines 25–28, page 8, shall now read:

"In addition, there is no evidence that the lapse of 90 days proved to be a hardship or prejudice to the plaintiff insurance company which company took the position that prejudice or the lack thereof was immaterial."

The prevailing parties are directed to submit a new judgment in accordance with this Opinion.

### AMENDED JUDGMENT

This cause having come on regularly for trial before the Court, and the Court having heard the evidence and the arguments of counsel, and having read the briefs and examined the legal authorities, and having taken the matter under advisement, and the Court in written opinions previously entered and filed herein on the 3rd day of November, 1965, and on January 6, 1966, having specially made findings of fact and having stated separately its conclusions of law thereon, which written opinions and findings of fact, and conclusions of law, the Court hereby adopts, approves, ratifies and incorporates herein by reference and makes a part hereof as fully as if set forth verbatim:

It is therefore ordered, adjudged and decreed:

1. That under and pursuant to the provisions of the policy of insurance # AG–40–26–31, and the endorsements thereto, issued by the plaintiff, American Home Assurance Company, a New York

corporation, full and complete coverage is extended and afforded to the defendants Joseph Chavers, deceased; Ann Chavers, deceased; Robert Lucas Haile, and Patricia Haile, his wife; Donald R. Perry and Mary Ellen Perry, his wife, and each of them, in regard to and in connection with a collision on or about September 15, 1960, between a 1960 DeSoto Automobile being operated by said Robert Lucas Haile and one certain Jawa Motor Cycle, being operated by Peter James Traxler, upon which Dale Wayne Sand was riding as a passenger.

2. It is further ordered, adjudged and decreed that the plaintiff, American Home Assurance Company, is and was at all times legally obligated to defend any and all suits brought against the said Joseph Chavers, deceased, and Ann Chavers, deceased; Robert Lucas Haile and Patricia Haile, his wife; Donald R. Perry and Mary Ellen Perry, his wife, or any of them jointly or individually seeking to recover damages for bodily injury or property damage arising out of said accident, including but not limited to the following suits:

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

MARTIN SAND, individually and next friend of DALE WAYNE SAND, a minor,

Plaintiff,

vs.

JOSEPH CHAVERS and ANN KING CHAVERS, husband and wife; ROBERT LUCAS HAILE and PATRICIA H. HAILE, husband and wife, DONALD R. PERRY and MARY ELLEN PERRY, husband and wife,

Defendants.

No. 126077

and:

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

PETER JAMES TRAXLER, a minor by his Guardian ad Litem, ZERELDA HENDRICKSON,

Plaintiff,

vs.

ANN KING CHAVERS, Administratrix, surviving spouse of JOSEPH CHAVERS, deceased, and ANN KING CHAVERS; ROBERT LUCAS HAILE, and DONALD E. PERRY and MARY ELLEN PERRY, husband and wife,

Defendants.

No. 127100

3. It is further ordered, adjudged and decreed that plaintiff, American Home Assurance Company, is legally obligated to pay to Martin Sand, individually and next friend of Dale Wayne Sand, a minor, in partial satisfaction of the judgment previously entered in said Cause No. 126077, the limits of plaintiff's policy, to-wit: the sum of $50,000.00, plus costs and interests on the sum of $50,000.00 from the 17th day of April, 1963, and in said Cause No. 127100, to pay to Peter James Traxler, a minor, by his Guardian ad Litem Zerelda Hendrickson, in partial satisfaction of said judgment previously entered therein, the limits of plaintiff's policy, to-wit: the sum of $50,000.00, and costs, and interest upon the sum of $50,-000.00 from the 22nd day of April, 1965.

4. It is further ordered, adjudged and decreed that defendants have and recover their costs herein incurred.

5. It is further ordered, adjudged and decreed that the Court expressly refrains from any determination whatsoever as to whether plaintiff, American Home Assurance Company, is liable for any sum or sums in excess of said policy limits as there was no evidence presented and no issue raised with respect to a refusal by the plaintiff to accept an offer of settlement within the policy limits, nor any evidence presented or issue raised with respect to a bad faith refusal to settle within the policy limits.