547 P.2d 934 (1976)
Donald BLOOM and Kenneth Palmer, Plaintiffs-Appellees,
v.
Stanley S. WOLFE, d/b/a Insurance Corner of Denver, Defendant-Appellee, and
Yosemite Insurance Company, a California Corporation, Defendant-Appellant.
No. 75-439.
Colorado Court of Appeals, Div. III.
March 4, 1976.
*936 Jerry N. Snyder, Denver, for plaintiffsappellees.
Quiat, Bucholtz & Bull, P. C., Alan H. Bucholtz, Denver, for defendant-appellee.
Walberg & Pryor, W. Randolph Barnhart, Denver, for defendant-appellant.
Selected for Official Publication.
BERMAN, Judge.
Plaintiffs, Bloom and Palmer, owners of a building which sustained fire damage, sued for coverage under a Yosemite Insurance Co. fire insurance policy. Plaintiffs alleged that Yosemite was liable pursuant to the policy, or, alternatively, that if the Yosemite policy was not in effect at the time of the fire that Wolfe, the insurance broker whom plaintiffs had requested obtain the insurance, was liable for his failure to do so. Wolfe denied liability and cross-claimed against Yosemite for indemnity. Yosemite asserted several affirmative defenses against plaintiffs and crossclaimed against Wolfe for indemnity alleging that Wolfe had wilfully misrepresented material facts in the insurance application. After trial to the court, the cross-claims were dismissed, and judgment was entered in favor of plaintiffs against defendant Yosemite. Yosemite appeals. We affirm.
In August 1972, vandalism had occurred at a 5-unit apartment building of plaintiffs rendering it uninhabitable. Shortly thereafter, the city health department notified plaintiffs that code violations existed and Bloom hired someone to do repairs, which were started sometime in October or November. On November 11, the insurance policies on the building were cancelled. Thereafter plaintiff Bloom, who purchased all his insurance for his commercial properties from Wolfe, requested Wolfe to purchase fire insurance on that building.
Wolfe testified that he assured Bloom he would write a policy on November 16, and on that date filled out a printed form prepared by Assuror's Group, Ltd., (Assuror's), an authorized agent of Yosemite. A fire occurred on the premises later that day.
Wolfe was not an authorized agent of Yosemite, but Roger McCarty, president of Assuror's, testified that he had given Wolfe "binding authority" which he explained meant that, notwithstanding a provision of the application making the insurance conditional on Assuror's approval, Wolfe had authority to bind insurance upon application. McCarty concluded therefore that, although he did not countersign the policy until November 17, coverage existed on November 16.
Yosemite contends that Assuror's and McCarty had no authority to appoint Wolfe as a subagent with the authority to bind insurance. It is true that the agency agreement between Yosemite and Assuror's made no mention of any power to appoint subagents. However, the trial court concluded, and we agree, that "the [agency] contract must be interpreted to allow Assuror's Group to appoint subagents [and that the appointment of subagents by Assuror's was necessary] so that business could be properly conducted in Colorado."
The authority to appoint subagents is inferred where the principal knows or has reason to know the agent employs subagents. Rommel v. New Brunswick Fire Insurance Co., 214 Minn. 251, 8 N.W.2d 28; Consolidated Underwriters Insurance Co. v. Landers, 285 Ala. 677, 235 So.2d 818, 42 A.L.R.3d 741; Restatement (Second) of Agency § 80; see also Nehring v. Bast, 258 Minn. 193, 103 N.W.2d 368. Here, McCarty testified that his practice of giving Wolfe and other brokers binding authority had existed "for some years," that Yosemite was well aware of the practice, and that Yosemite had never *937 objected until this case. Hence, the trial court's conclusion on this issue finds substantial support in the record and is binding on review.
Also, on a related point, it is of no relevance that Bloom did not know for what company Wolfe was an agent. A subagent acting within the scope of his authority binds the principal to the same extent as the agent who appointed him. Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640; 4 G. Couch, Cyclopedia of Insurance Law § 26:359 (R. Anderson 2d ed.).
Yosemite next contends the court erred in failing to find that Bloom misrepresented the insured premises as occupied when they were in fact vacant. This contention is without merit. It was Wolfe, who we have held was Yosemite's agent, who filled out the application, not Bloom. There was no evidence that Bloom had made any misrepresentation of fact concerning the status of the occupancy or non-occupancy of the premises.
Yosemite also contends the court erred in dismissing its cross-claim against Wolfe for indemnity for alleged misrepresentation in the application concerning occupancy. We do not find Wolfe's statements and omissions regarding the building's vacancy as constituting any sort of misrepresentation. Furthermore, although Wolfe characterized the building as a "good risk" knowing the prior policies had been cancelled, there was testimony Yosemite insured only "substandard" risks, and thus, this statement is not necessarily a misrepresentation. Hence, the court's finding of "no misrepresentation, fraud or collusion on the part of Stanley S. Wolfe" is supported by the evidence and will not be disturbed. Broncucia v. McGee, 173 Colo. 22, 475 P.2d 336; Adler v. Adler, 167 Colo. 145, 445 P.2d 906.
Nor did the fact that Wolfe left blank the question in the application concerning occupancy require a finding that there was no coverage. It is well established that when an insurer accepts an application for insurance with an unanswered question, liability cannot be denied on this ground. Capital Livestock Insurance Co. v. Campion, 71 Colo. 156, 204 P. 604; Pacific Mutual Life Insurance Co. v. Van Fleet, 47 Colo. 401, 107 P. 1087. "[I]t becomes the duty of the company, if it desires more specific information, to ask for it before issuing the policy, else the condition is waived. . . ." Merchants' Mutual Fire Insurance Co. v. Harris, 51 Colo. 95, 116 P. 143. It is uncontroverted that Assuror's issued the policy; thus, any defect in the application was waived, and the court did not err in finding coverage even though the building was vacant.
Yosemite further contends the court erred in ruling that because Yosemite refused to pay the claim on a number of other grounds, the defense of failure to file a timely proof of loss form was waived. We find no error in the court's ruling.
It is conceded a proof of loss was not filed within the 60-day period required by the policy. However, where an insurer refuses to pay the loss on grounds other than the absence of the proof of loss, that defect is waived. Nebraska Drillers, Inc. v. Westchester Fire Insurance Co., 123 F. Supp. 678 (D.Colo.); Hartford Fire Insurance Co. v. Hammond, 41 Colo. 323, 92 P. 686. Here, the evidence supports the trial court's finding that the refusal to pay the claim was on grounds other than failure to file proof of loss. From the beginning, Yosemite and its local adjuster were suspicious of the claim for various reasons. In fact, when Yosemite wrote the local adjuster and instructed him not to take a proof of loss, the company made no mention of plaintiff's failure to file a proof of loss, even though the 60-day period had already expired.
The non-waiver agreement, signed by plaintiffs to preserve Yosemite's defenses, does not preclude a waiver of the proof of loss requirement. This agreement was *938 signed after the 60-day period had expired, after the letter instructing the adjuster not to take a proof of loss, and after the waiver of this defense had already occurred.
Yosemite also assigns as error the court's award of interest on the amount of the judgment from the date of the filing of the complaint.
The statute provides in relevant part that:
"Creditors shall be allowed to receive interest. . . for all moneys after they become due, on any bill, bond, promissory note, or other instrument of writing . . .." Section 5-12-102, C.R.S.1973.
Our Supreme Court has interpreted "other instrument of writing" to be "one based on contractual relations; an instrument importing mutuality; one which implies an obligation to pay for a consideration rendered." Cobb v. Stratton's Estate, 56 Colo. 278, 138 P. 35. "A policy of insurance is a contract," Olinger Mutual Benefit Association v. Christy, 139 Colo. 425, 342 P.2d 1000, and is within the meaning of "other instrument of writing." Di Leo v. United States Fidelity & Guaranty Co., 50 Ill. App.2d 183, 200 N.E.2d 405; and see also Kwal Paints, Inc. v. Travelers Indemnity Co., 34 Colo.App. 74, 525 P.2d 471.
The court awarded interest on the amount of the judgment from the date the complaint was filed. We hold that the moneys had "become due" by that time. The loss was payable, under the terms of the policy, "60 days after proof of loss. . . is received." Here, there was a waiver of the proof of loss. We need not decide precisely when, in light of the waiver of proof of loss, the loss was payable since the loss was clearly payable by the time the complaint was filed (approximately eight months after the fire) and since Yosemite already had denied coverage by that date. See Chase v. National Indemnity Co., 129 Cal.App.2d 853, 278 P.2d 68.
Although interest cannot be allowed on unliquidated claims, Yeager Garden Acres, Inc. v. Summit Construction Co., 32 Colo.App. 242, 513 P.2d 458, the amount due was sufficiently fixed to permit the awarding of interest. Plaintiffs asked for, and were awarded, $9,254.50 based upon a construction repair bid solicited by Yosemite's local adjuster. From the record it does not appear that Yosemite disputed the amount, only the liability itself. The trial court therefore properly awarded interest. See Western Oil Fields, Inc. v. Coit, 29 Colo.App. 567, 487 P.2d 562; and Chase v. National Indemnity Co., supra.
The judgment in favor of plaintiff and against Yosemite and the dismissal of Yosemite's cross-claim against Wolfe, is affirmed.
PIERCE and SMITH, JJ., concur.