**Duane CUGNINI and Pat Cugnini, d/b/a Hi-Country Cattle Company, a Partnership, Plaintiffs-Appellees and Cross-Appellants,**

v.

**REYNOLDS CATTLE CO., a Colorado corporation, Defendant-Appellant and Cross-Appellee,**

and

**Wally Grant, Buck Grant, and Charles Grant, d/b/a Platte Valley Feeders, Defendants and Cross-Appellees.**

No. 80CA0191.

Colorado Court of Appeals,
Div. II.

Dec. 31, 1981.

Rehearing Denied Jan. 28, 1982.

Certiorari Granted June 28, 1982.

I. H. Kaiser, P. C., I. H. Kaiser, Denver, for plaintiffs-appellees and cross-appellants.

Hutchinson, Black, Hill, Buchanan & Cook, William D. Meyer, James L. Carpenter, Jr., Boulder, for defendant-appellant and cross-appellee.

Holme, Roberts & Owen, Stephen E. Snyder, Denver, for defendants and cross-appellees.

KELLY, Judge.

Plaintiffs, Duane and Pat Cugnini (Cugninis), claimed damages for conversion of certain cattle by defendant, Reynolds Cattle Co. (Reynolds). The trial court held that title to the cattle did not pass from the Cugninis to Reynolds because Reynolds failed to comply with the livestock bill of sale laws, § 35–54–101 et seq., C.R.S.1973, and awarded the Cugninis a judgment for the value of the cattle on the date of the conversion. The trial court rejected Reynolds' argument that title passed to it under the applicable provisions of the Uniform Commercial Code notwithstanding its failure to comply with the bill of sale laws. Reynolds has appealed the judgment entered against it. The Cugninis have cross-appealed, disputing the trial court's award of damages to Reynolds for trespass, claiming that defendant, Platte Valley Feeders (PVF), was liable to the Cugninis as bailee, and asserting that they should receive not merely the value as of the date of the taking but the full net proceeds of the sale by Reynolds. We affirm in part and reverse in part.

The following facts were found by the trial court. Over a period of several years, the Cugninis, who operated a cattle business in Durango, conducted various business dealings with a cattle order buyer named Russell. In September 1978, Russell sought to buy some cattle from the Cugninis. Since Russell had failed to pay the Cugninis in a prior transaction, Duane Cugnini told Russell that he would not "release" the cattle until Russell wired the money for them. Russell arranged with the Cugninis to have the cattle shipped to PVF, which owns a feedlot located adjacent to the Reynolds feedlot in Platteville. The Cugninis had not previously done business with Reynolds or PVF.

Russell contacted PVF to arrange for reception of the cattle, but the Cugninis did

not notify PVF that the cattle were not to be "released" to Russell. Russell sold the cattle to Reynolds, receiving a sight draft from Reynolds in full payment. Reynolds asked Russell for the brand inspection certificate from the owner, and Russell told Reynolds he would supply it in a few days. The cattle were then moved from PVF to the adjoining Reynolds feedlot.

The Cugninis did not receive payment from Russell for the cattle. When Duane Cugnini realized Russell had sold them to Reynolds, he demanded the return of the cattle, but Reynolds refused. Several weeks later, the Cugninis and a group of men on horseback armed with revolvers entered the Reynolds feedlot during the early morning hours and drove the cattle to a nearby ranch. Later in the day, Reynolds regained the cattle with the help of the sheriff. The Cugninis sued Reynolds and PVF to regain the cattle, and Reynolds counterclaimed for trespass. The cattle were later sold and the proceeds were deposited with the court.

Reynolds asserts here, as it did before the trial court, that the UCC applies to pass title to the cattle, while the Cugninis argue that Reynolds' noncompliance with the livestock bill of sale laws prevented passage of title to Reynolds. Reynolds asserts, in addition, that the Cugninis failed to establish their own title to the cattle by evidence of a bill of sale from their sellers. We agree with the trial court that compliance with the livestock bill of sale laws is required to pass title and that Reynolds did not comply. However, we reach a different disposition than did the trial court because of the absence of sufficient evidence of title to the cattle in any of the parties to this litigation.

## I.

We disagree with Reynolds' assertion that the livestock bill of sale laws do not apply to this transaction. Section 35–54–101, C.R.S.1973, provides that no person shall sell or buy livestock unless the seller gives and the buyer receives a bill of sale in writing. Failure to comply with this provision is a misdemeanor under § 35–54–102, C.R.S.1973.

Section 35–54–103(1), C.R.S.1973, provides that a "duly executed bill of sale is an instrument in writing by which the legal owner or authorized agent transfers to the buyer the title of livestock therein described. . . ." The statutory requirements for a bill of sale are set forth in § 35–54–103(2), C.R.S.1973:

"Both the seller and the buyer shall sign a bill of sale, giving the post-office address of each, in the presence of a witness, who also signs with his name and address, and who is a legal resident of the county where the transfer of the described livestock takes place. The bill of sale shall be dated the day of the transaction."

■ Reynolds argues that the livestock bill of sale laws were intended to prevent rustling and were not intended to affect private sales of livestock. These laws plainly were designed to provide a means for detection of cattle theft, but it does not necessarily follow that they do not also regulate private sales. On the contrary, no other meaning can be assigned to the language of § 35–54–103(1) than that it applies to all sales of livestock.

■ Reynolds further asserts that the livestock bill of sale laws were not intended to cover the entire range of problems which arise during a cattle sale transaction. However, the failure of the bill of sale laws to cover all sales issues does not render them ineffective in their specific application to a transfer of valid title to livestock. See *Pugh v. Stratton*, 22 Utah 2d 190, 450 P.2d 463 (1969).

■ While Reynolds does not claim that it has fully complied with the bill of sale laws, it nevertheless argues that its documentation constituted sufficient compliance. The sight draft used by Reynolds to pay Russell for the cattle contained Reynolds' signature, the date of the transaction, the number and weight of the cattle, and Russell's signature and address as endorser. Another document containing Russell's signature as seller, the date, and the quantity and price of the cattle was also admitted

into evidence. Taken together, these two documents do not comply with the requirements of § 35–54–103(2), C.R.S.1973. In addition to the information in these documents, the statute requires a detailed description of the cattle, the address of the buyer, and the signature and address of a witness. Since Reynolds did not comply with the livestock bill of sale requirements, title did not pass to it under those sections.

## II.

Reynolds contends that §§ 4–2–401(2) and 4–2–403(2), C.R.S.1973, apply to validate its cattle purchase. It argues that these provisions of the Uniform Commercial Code supersede the livestock bill of sale laws.

Section 4–2–401(2), on which Reynolds relies, provides that title passes to the buyer at the time and place at which the seller completes physical delivery of the goods, even though a document of title is to be delivered at a different time and place. Section 4–2–403(2), C.R.S.1973, provides: "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." These provisions are in direct conflict with § 35–54–103, C.R.S.1973, which requires a duly executed bill of sale to pass title.

■ While we agree that livestock are "goods," see § 4–2–105(1), C.R.S.1973, we do not thereby conclude that the UCC supplants the livestock bill of sale laws concerning the passage of title to livestock. The Colorado General Assembly specifically repealed numerous statutes when it enacted the Uniform Commercial Code in 1965. See Colo.Sess. Laws 1965, ch. 330, § 155–10–102 at 1477. The livestock bill of sale laws were not among them, and we cannot assume legislative intent to repeal them *sub silentio*. Rather, the UCC provisions and the specific livestock bill of sale provisions must be harmonized to give effect to them both. See § 2–4–205, C.R.S.1973.

It is true that § 4–10–103, C.R.S.1973, provides that all statutes inconsistent with the UCC provisions adopted in Colorado are repealed. Nevertheless, this section does not necessarily operate to repeal the livestock bill of sale laws. An exception to that statute is § 4–10–104, C.R.S.1973, which provides that the UCC article concerning documents of title "does not repeal or modify any laws prescribing the form or contents of documents of title. . . ."

Moreover, § 4–2–102, C.R.S.1973, provides that the Colorado UCC provisions do not "impair or repeal any statute regulating sales to consumers, farmers, or other specified classes of buyers." Reynolds argues that this section does not apply to the livestock bill of sale laws because they regulate the sale of specified goods, not sales to specified classes of buyers. However, by regulating passage of title to livestock, the bill of sale laws inevitably address sales to buyers of livestock.

## III.

■ Although the UCC and the livestock bill of sale laws are capable of harmonious application under normal circumstances, this case presents the question of location of title when neither party complied with the bill of sale laws. The only evidence of the Cugninis' compliance with § 35–54–103, C.R.S.1973, was the brand inspection certificate for the cattle. It identified the cattle by brand and showed that they were owned by Mill Creek Ranch and had been sold to "Duane Cugnini, c/o Platte Valley Feeders." The bill of sale portion of the brand inspection certificate contains blanks for the signature and address of the seller, buyer, and witness, as well as the date and description of the cattle. However, the Cugninis' brand inspection certificate contained only the signature of the seller, the description of the cattle, and the date. Since the Cugninis did not prove their own compliance with the livestock bill of sale laws, they cannot prevail in their claim against Reynolds under the bill of sale laws. *Dorris v. San Luis Valley Finance Co.*, 90 Colo. 209, 7 P.2d 407 (1932); *McCormick v. First National Bank*, 88 Colo. 599, 299 P. 7 (1931).

Where neither party can claim valid title under the livestock bill of sale laws, we must resort to the law merchant, as now embodied in the UCC, to resolve the dispute. Application of UCC provisions to aspects of a livestock transaction other than passage of title is not inconsistent with the additional requirements of compliance with the livestock bill of sale laws. *See* § 4–2–401(5) and § 4–2–403(1.5), C.R.S.1973 (1980 Cum.Supp.); *Ranchers & Farmers Livestock Auction Co. v. Honey*, 38 Colo.App. 69, 552 P.2d 313 (1976). Here, title to the cattle passed to Reynolds at the time and place at which Russell completed physical delivery of the cattle. Section 4–2–401(2), C.R.S.1973. Although Russell's title to the cattle is disputed by the Cugninis, they entrusted possession of the cattle to Russell, giving him the power to transfer all their rights to Reynolds under § 4–2–403(2), C.R.S.1973. Since Reynolds acquired title under the UCC, the proceeds of the sale of the cattle belong to Reynolds.

### IV.

On cross-appeal, the Cugninis challenge the trial court's ruling that Platte Valley Feeders was not liable as the Cugninis' bailee for the conversion of the cattle. Bailment is the delivery of personal property by one person to another in trust for a specific purpose with a contract, express or implied, that the trust shall be faithfully executed and the property duly accounted for when the special purpose is accomplished. *Simons v. First National Bank*, 30 Colo.App. 260, 491 P.2d 602 (1971). Here, the Cugninis made no independent arrangements with PVF, but sent the cattle to PVF pursuant to arrangements made by Russell. By clothing Russell with the apparent authority to act on their behalf, the Cugninis created an agency relationship with Russell which authorized him to make a bailment agreement with PVF. *See Bloom v. Wolfe*, 37 Colo.App. 407, 547 P.2d 934 (1976). PVF was the bailee of Russell, not of the Cugninis.

A bailee is not liable for conversion if he delivers the property pursuant to the instructions of his bailor without knowledge or reason to know that such bailor was not authorized to dispose of the property. *Restatement (Second) of Torts* § 235(3). The Cugninis assert that PVF should have known they owned the cattle because the bills of lading showed that the cattle were consigned to "Duane Cugnini c/o Platte Valley Feeders." However, three of the four bills of lading consigned the cattle to PVF and not to Cugnini. PVF had dealt exclusively with Russell and had no reason to know Russell was not entitled to dispose of the cattle.

A bailee may discharge his obligation by delivery of the property concerned to someone authorized to accept the property on behalf of the bailor. *Hepp v. United Airlines Inc.*, 36 Colo.App. 350, 540 P.2d 1141 (1975). By delivering the cattle to Reynolds pursuant to Russell's instructions, PVF fulfilled its obligations as bailee. The trial court correctly held that PVF is not liable to the Cugninis for delivery of the cattle to Reynolds.

### V.

In the trial court, Reynolds counterclaimed for damages incurred when the Cugninis' gang removed the cattle from Reynolds feedlot in a dawn raid. The trial court held that, although the Cugninis were privileged to enter Reynolds' property to regain their cattle, they had exceeded the privilege by entering at an unreasonable time in an unreasonable manner. The trial court awarded damages to Reynolds in the amount of $271.36.

Since as between the Cugninis and Reynolds, the Cugninis were not the owners of the cattle, their going upon Reynolds' property was a trespass. *Miller v. Carnation Co.*, 33 Colo.App. 62, 516 P.2d 661 (1973). Therefore, the award of damages is affirmed.

The judgment is affirmed as to the determination that PVF was not liable and as to the award of damages to Reynolds for trespass. The judgment is reversed as to the determination that title to the cattle re-

mained with the Cugninis, and the cause is remanded with directions to enter judgment for Reynolds for the sale proceeds and the trespass damages.

VAN CISE and TURSI, JJ., concur.