573 P.2d 65

**NORTHERN CONTRACTING COMPANY, a Minnesota Corporation licensed to do business in Arizona, Appellant,**

v.

**ALLIS–CHALMERS CORPORATION, a Delaware Corporation licensed to do business in Arizona, and Hugh T. Coplen, Appellees.**

No. 13145.

Supreme Court of Arizona,
In Division.

Dec. 19, 1977.

Hill & Savoy by Dennis J. Curran, Phoenix, for appellant.

Evans, Kitchel & Jenckes, P. C. by David L. Beaugureau, Phoenix, for appellee Allis-Chalmers.

Ronald G. Cooley, Phoenix, for appellee Coplen.

CAMERON, Chief Justice.

Plaintiff-Appellant, Northern Contracting Company, filed suit against defendants-appellees, Allis-Chalmers and Hugh T. Coplen, in the Superior Court of Maricopa County alleging damages of $17,346.44 from the sale of faulty butterfly valves to Northern for use in a water main project for the City of Phoenix. Upon motion of the defendants, the trial court entered summary judgment for the defendants and plaintiff appealed. We took jurisdiction pursuant to Rule 47(e)(5), 17A A.R.S., Rules of the Supreme Court.

We must answer only one question on appeal: whether the evidence before the court created a conflict which required that the motion for summary judgment be denied.

In January 1973, Northern ordered eight Model 150 FR, AWWA Class 150 B butterfly valves arranged for "burial service," from Allis-Chalmers through defendant Coplen, the factory representative in Phoenix. The valves cost between $8,789.00 and $10,911 each, depending upon the size of the valve. All negotiations were conducted by Coplen on behalf of Allis-Chalmers but the contract signed by the parties was a printed form contract furnished by Allis-Chalmers. The printed contract included a warranty on the subject goods for defects and promised remedy by Allis-Chalmers. Choice of remedy, i. e., repair or replacement, was left exclusively with Allis-Chalmers. Expenses incidental to the remedy were to be borne by the purchaser, Northern. Allis-Chalmers also disclaimed any liability other than that expressly provided by the warranty.

Northern alleged, however, that the purchase was induced by misrepresentations about the quality of the valves which Coplen made during the negotiations. According to Northern, Coplen had said that the valves would not have to be inspected or tested before installation because they would have been tested in conformance with the American Water Works Association (AWWA) standards before they left the factory. It was these assurances and not the printed warranty that Northern contends induced the decision to order from Allis-Chalmers.

Between 9 May and 17 August 1973, the valves were delivered to Northern's jobsite in Phoenix and stored there. Each valve was visually inspected when it was delivered. The factory packaging permitted inspection without opening and the valves remained in the packaging until they were installed during late summer 1973.

In March 1974, Dave Sing, an engineer for the City of Phoenix, who had observed the installation of the valves, conducted the line tests necessary for city approval of Northern's work. This was the first test of the valves since their delivery by Allis-Chalmers. All but two of the valves leaked during these tests and the city withheld approval and part of the payment for the project until the leaks were corrected. Northern contacted Allis-Chalmers regarding the leaks and a field representative was dispatched to the site in conformance with the warranty. To provide access to the valves for repairs, Northern had to dewater and excavate the line. Initially, the representative attempted to stop the leaks by means of calibration. This method was sufficient to fix all but one of the leaking valves. The final valve had to be removed from the line in order to repair a slipped seat within the valve. Northern excavated, removed, and reinstalled the faulty valve. On 6 May 1974, the line successfully passed the pressure and leakage tests.

The complaint was filed on 16 October 1974. Northern claimed as damages the expenses for excavation and reinstallation of the valves for repair and interest on the delay in payment by the city. The allegations of the complaint suggested that liability could be predicated on the theories of both warranty and fraudulent misrepresentation. Both Allis-Chalmers and Coplen moved for summary judgment. For consideration of the motion, the trial court had before it interrogatories Allis-Chalmers had

submitted to Northern and supplemental answers made following a court order. Allis-Chalmers also submitted affidavits of employees in the Pennsylvania plant outlining the company's testing procedure and asserting that it conformed with the AWWA standards.

Allis-Chalmers employees asserted in the affidavits their personal knowledge of the testing procedures and that the procedures conformed to the standards. Exhibits were attached to each affidavit adding more detail to the assertions of the affidavits. AWWA shop testing standards for butterfly valves were included with the exhibits. "Checklists" were attached to the affidavits. Assuming the checkmarks and other markings were entered in the ordinary course and show that the tests were in fact administered, these sheets would indicate the proper tests were made and there was no leakage at that time.

In opposition to the motion, Northern submitted the affidavits of Dave Sing, engineer for the City of Phoenix, and of Quinn Hutchinson, a registered engineer. Both asserted that their experience with valves of the kind used in the project indicated that the valves would not have leaked if they had been tested properly at the factory.

The affidavit of Dave Sing reads as follows:

"1. That he is an Engineering Inspector employed by the City of Phoenix Engineering Department; was assigned as the engineering inspector for the City of Phoenix Project # 006 W–71159.01; and has 18 years of experience in the field of general and pipeline construction including butterfly valve installation.

"2. That his responsibilities included inspecting the installation and testing of all valves installed in the above-referenced water main project.

"3. That he personally observed the installation and test procedures conducted by Northern Contracting co. on eight Allis-Chalmers valves which are the subject matter of this action.

"4. That he observed the tests run on the line and valves in question and six of the eight valves failed the pressure and leakage tests, and of the six valves that failed the tests, five also leaked around the packing.

"5. That he was present when an Allis-Chalmers field man recalibrated the six valves which failed the line tests. As a result, five of six of these valves passed the required line tests and one valve was directed to be removed from the line for repair of a slipped seat within the valve.

"6. That based upon his observations of the cratings, valves, their installation, and his experience with similar valves, it is his opinion that the six valves which failed the line tests were probably not tested properly prior to delivery. His opinion is based upon the fact that the crating around each of the valves in question was undamaged; the valves appeared in good condition after uncrating; five of these valves were fixed by mere calibration, five of these valves leaked around the packing; and that had these valves been properly tested, the above-mentioned defects should not have occurred."

■■■ In a motion for summary judgment, neither the trial court nor the appellate court may weigh the evidence, *In re Sherer's Estate*, 10 Ariz.App. 31, 455 P.2d 480 (1969), and extreme care should be used in granting a motion for summary judgment. *State v. Ashton*, 4 Ariz.App. 599, 422 P.2d 727 (1967), appeal after remand, 9 Ariz.App. 564, 454 P.2d 1004 (1969). Even if there is no factual dispute, where possible inferences to be drawn from the circumstances are conflicting, a summary disposition is unwarranted. *State v. Ashton*, supra.

However, Rule 56(e) does require when a motion for summary judgment is properly supported that the respondent fails to respond adequately at his peril:

"56(e). Form of affidavits; further testimony; defense required

"* * * When a motion for summary judgment is made and supported as pro-

vided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

■ The requirement of Rule 56(e) that "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits * * * must set forth specific facts showing that there is a genuine issue for trial," merely means that where there is before the court uncontroverted, competent evidence from which only one inference can be drawn and the opposing party fails to controvert those facts by affidavit, then summary judgment is proper. *Nemec v. Rollo*, 114 Ariz. 589, 562 P.2d 1087 (App.1977). The failure of the opposing party to file controverting affidavits does not in and of itself make the granting of the summary judgment "appropriate."

■ Defendants cite *Pace v. Sagebrush Sales Co.*, 114 Ariz. 271, 560 P.2d 789 (1977), in support of their position that the motion for summary judgment should have been granted. In *Pace*, the plaintiff moved for summary judgment in defendant's counterclaim of fraud in the sale of lumber. The affidavits were found to be conclusory and did not meet the issue. We stated:

"* * * The defendant's affidavit draws general conclusions to the effect that Hubbard's misrepresentations were made intentionally and with knowledge of their falsity, and that he was damaged. The specific facts, however, which led the affiant to arrive at these conclusions are not made evident. Mere conclusions of ultimate facts and law and general allegations do not fulfill the requirement that the supporting affidavits set forth specific facts showing a genuine fact issue exists. * * *" 114 Ariz. at 275, 560 P.2d at 793.

We also cited with approval a previous case of the Court of Appeals which stated:

"[I]t is elementary that an opponent to a motion for summary judgment does not raise an issue of fact by merely stating in his affidavit that an issue of fact exists, but rather he must show that evidence is available which would justify a trial of that issue." *Feuchter v. Bazurto*, 22 Ariz.App. 427, 429, 528 P.2d 178, 180 (1974).

In the instant case, the fact of the failure of the valves in itself, absent any affidavits by plaintiff, would be a sufficient basis from which the trial court could have denied the motion for summary judgment. It is not disputed that the valves were purchased for a particular job and that they did not work. Reasonable men could conclude that the valves arrived in a defective condition and that the defective condition was the result of the failure of the company to properly test the valves before shipping.

The affidavit of Dave Sing, however, goes further. It recites the facts of the installation of the valves as well as the test failure which he personally observed. In addition, as an expert, he was able to say that based on what he observed, "had these valves been properly tested, the above-mentioned defect should not have occurred." As an expert, this opinion evidence would be admissible. Had a jury, with the testimony of the people who signed the affidavits before them as well as the testimony of Dave Sing, found for the plaintiff, we could properly uphold the verdict as being based on the evidence.

Viewing the evidence in a light most favorable to the plaintiff herein and giving him all reasonable inferences to be drawn therefrom, *Taylor v. Mueller*, 24 Ariz.App. 403, 539 P.2d 517 (1975), we find that the motion for summary judgment should not have been granted.

Reversed and remanded.

STRUCKMEYER, V. C. J., and GORDON, J., concur.