685 P.2d 136

**UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland corporation, Plaintiff/Appellee,**

v.

**POWERCRAFT HOMES, INC., an Arizona corporation, Millie Wulff Richards, Samuel G. Farina and Gloria Farina, his wife, Lee Woodward, Brenda Woodward McGraugh, Sarah Vaughan White, Richard Fillion and Nancy Fillion, his wife, Arthur M. Schaar and Darenda Schaar, his wife, and Robert L. Grant, Defendants/Appellants.**

**No. 2 CA–CIV 4919.**

Court of Appeals of Arizona, Division 2.

March 12, 1984.

Review Denied June 13, 1984.

Jennings, Kepner & Haug by Craig R. Kepner and Julia C. Attwood, Phoenix, for plaintiff/appellee.

Stanfield, McCarville, Coxon & Fitzgibbons by David A. Fitzgibbons, Casa Grande, for defendants/appellants.

## OPINION

BIRDSALL, Chief Judge.

This appeal is from a summary judgment declaring, in effect, that the plaintiff/appellee, United States Fidelity and Guaranty Company (USF & G), was not obligated to pay a judgment against appellant, Powercraft Homes, Inc. That judgment was en-

tered March 15, 1982, in Pinal County, cause number 31933, in favor of the individual appellants in the instant case. It was originally in the cumulative amount of $210,000 but was reduced on appeal to this court. *See Richards v. Powercraft Homes*, 139 Ariz. 264, 678 P.2d 449 (App.1983), approved in part, vacated in part No. 16656-PR, Arizona Supreme Court, filed January 3, 1984. The judgment resulted from findings that Powercraft failed to properly construct habitable homes for the individual appellants.

USF & G insured Powercraft's liability under policies covering the time period of September 1, 1975 to September 1, 1977. The original policy was issued on or about September 1, 1975. That policy was renewed on or about September 1, 1976, for one year. No other coverage was provided Powercraft by USF & G after September 1, 1977. The original policy and the renewal were purchased from the Don Mahoney Agency in Casa Grande, Arizona. They were countersigned by an insurance agent with that agency, H.B. Claunts, as authorized representative of USF & G. These policies would have provided Powercraft with coverage for the liability arising from defective construction.

The complaint in cause number 31933 was filed on August 17, 1979. The summons and complaint were served August 22 on Powercraft. On that date the president of the company telephoned Claunts. The only affidavit supplied by the appellants in opposition to the motion for summary judgment relates that conversation, together with other facts:

"I, H.B. "BOOTS" CLAUNTS, being duly sworn upon my oath, depose and say:

1. That I have been an insurance agent for the Mahoney Insurance Agency in Casa Grande, Arizona, since July of 1959.

2. That I have been an authorized agent for U.S.F. & G. Insurance Company since July of 1959.

3. That I sold a number of different insurance policies to Powercraft Homes, Inc. through its President, Michael D.

Franks, two of which policies were U.S.F. & G. policies number ICC–714826 and ICC–994168.

4. That on or about the date of August 22, 1979, when Powercraft Homes, Inc. was served with the Complaint in the lawsuit of *Woodward, et al., v. Powercraft Homes, Inc.*, for claims arising out of the Indian Hills Subdivision, Michael D. Franks called me and notified me of the lawsuit and inquired as to whether I was aware of any insurance coverage for Powercraft Homes, Inc. that would cover these claims and this lawsuit.

5. That I indicated at that time that I no longer had any coverage for Powercraft Homes, Inc. and that he should contact Bob Lamaar of the Lamaar-Baker Insurance Agency in Casa Grande who had started selling Insurance to Powercraft Homes, Inc. in 1977 or 1978, because I was no longer doing business with Powercraft Homes, Inc.

6. That Powercraft Homes, Inc. had insurance coverage with U.S.F. & G. from September 1, 1974 to September 1, 1977 as follows:

| | |
|---|---|
| Policy No. ICC–683266: | September 1, 1974 to September 1, 1975 |
| Policy No. ICC–714826: | September 1, 1975 to September 1, 1976 |
| Policy No. ICC–994168: | September 1, 1976 to September 1, 1977." [1] |

USF & G was given no notice of the lawsuit other than this call to Claunts. Powercraft made no other inquiries of Claunts. The company first learned of the judgment on April 22, 1982, when it received a copy of the following letter to Claunts from the attorney for Powercraft:

"Mr. H.B. Claunts
THE MAHONEY AGENCY
701 E. Cottonwood Lane
Casa Grande, Arizona 85222

  RE: Powercraft Homes, Inc.
   USF & G Policy # ICC994168
   Term 9–1–76–9–1–77
   USF & G Policy # ICC714826
   Term 9–1–75 9–1–76
   Property Coverage

Dear Mr. Claunts:

As you know, I represent Powercraft Homes, Inc, for whom the referenced insurance policies were issued in 1975 and 1976. The policies each provided coverage for products liability. I was not aware of the existence of this coverage until a recent date.

During the term of these policies, the insured constructed homes in the Indian Hills subdivision, North of Casa Grande. The insured was made a defendant in an action filed by several purchasers and owners of homes in the Indian Hills subdivision. The action was delayed for about two and one-half years before trial for a number of reasons. The action was based on an implied warranty of workmanship and compliance with plans, specifications, codes and regulations. The case was tried in April, and resulted in a substantial judgment against the insured.

I am sure you are aware of the case, and the trial. Mike Franks indicated he had probably discussed this matter with you on occasion. I was not aware of the products coverage, and no tender of the defense of the case was made to the insurance carrier. This letter is to advise you and the insurance carrier of the possible claims.

All of the homes involved in the legal action were built, and sold, during the term of the two referenced policies. From my review of the coverage, it would appear the houses were covered as the insured's product. I have reviewed the exclusions, and they do not appear to exclude coverage. We may have a problem with notice of claim, which will have to be resolved. A copy of the judgment is enclosed.

We have the issued policies in file. If you have destroyed your dailies, I'll be glad to furnish you with photocopies of the policies.

---

1. The reference to a policy covering the period September 1, 1974 to September 1, 1975, in this affidavit is the only mention of that earlier policy in the entire record.

Please give this your prompt consideration, and advise.

Very truly yours,

/S/

Robert E. Brown"

As might be expected the declaratory judgment action was based on the failure of Powercraft to comply with the notice requirements contained in the insurance policies. These provisions were:

"4. Insured's Duty in the Event of Occurrence, Claim or Suit.

(a) In the event of an occurrence, *written notice* containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, *shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.*

(b) If claim is made or suit is brought against the Insured, *the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.*

\*    \*    \*    \*    \*    \*

5. Action Against Company

*No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy,* nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company."

[Emphasis added]

The appellants resisted the motion for summary judgment on the theory that Claunts had denied coverage for USF & G and for that reason they did not have to comply with the policy provisions. This is the issue they now raise on appeal, arguing either that USF & G is liable as a matter of law, or, at least, that there are material, disputed questions of fact precluding summary judgment. We reverse.

There is authority for the proposition that an insured need give no further notice, or comply with policy requirements, when the insurance company has denied coverage.

"If the insurer denies liability to the insured on grounds other than the sufficiency, lateness, or absence of notice or proof of loss, compliance with the requirements as to notice and proof of loss are waived, for the insurer having raised one objection or certain objections is deemed to have raised all that exist, and good faith prohibits it from thereafter raising any others.

.    .    .    .    .

Compliance with the policy provisions relating to notice and proof of loss is also waived where—the agent states that … the loss is not covered by the policy, … [emphasis added]" 4 Couch on Insurance 2d § 26:305 (1960)

*Arlotte v. National Liberty Insurance Company,* 312 Pa. 442, 167 A. 295 (1933), 108 A.L.R. 896, Annot. 108 A.L.R. 901.

■ In other words, having once denied coverage on the basis that a claim is not covered by the policy, the insurer cannot thereafter raise the new defense of the insured's failure to comply subsequently with the policy's notice provisions. *See also Rock Transport Properties Corporation v. Hartford Fire Insurance Company,* 433 F.2d 152 (2nd Cir.1970); *Travelers Insurance Company v. Peerless Insurance Company,* 287 F.2d 742 (9th Cir. 1961).

■ Furthermore, there is no specific requirement as to the form of this waiver by denial of coverage.

"The waiver of the policy provision may be made orally, and conduct of the insured or its authorized agents may give rise to an implied waiver. Thus, where the insurer has denied liability on some other ground [i.e., some ground other than the failure to forward suit papers] it

is held to be precluded from defending successfully against an action brought under the liability policy on the ground of a violation by the insured of the provision as to forwarding suit papers." 14 Couch on Insurance 2d § 51:210, (rev. ed. 1982).

*See also Samson v. Transamerica Insurance Company,* 30 Cal.3d 220, 178 Cal. Rptr. 343, 636 P.2d 32, 43 (1981); *Western Farm Bureau Mutual Insurance Company v. Lee,* 63 N.M. 59, 312 P.2d 1068, 1070 (1957). In other words, the denial of coverage need not be by written document but rather may be communicated orally through a telephone call.

This implied waiver extends to a denial of coverage on the basis that the policy is not in effect at the time of the denial even though it is discovered later that the policy was in effect at the time the claim arose. See 14 Couch on Insurance 2d § 49B:94, (rev. ed. 1982). The rule requires only that the insurer communicate to the insured its intent not to pay the claim and recognizes the futility of nevertheless obligating the insured to continue the useless task of submitting further notices.

> "The rule that denial effects a waiver is based upon the recognition of the practical consideration that where it is clear that the insurer will not pay in any event, it is absurd to require the insured to do acts which will prove useless." 14 Couch on Insurance 2d, *supra,* § 49B:62.

*See also McCarty v. Maryland Casualty Company,* 429 F.Supp. 112 (W.D.Ark. 1976); *Schippers v. State Farm Mutual Automobile Insurance,* 30 Utah 2d 404, 518 P.2d 1099 (1974); *Bloom v. Wolfe,* 37 Colo.App. 407, 547 P.2d 934 (1976); *Adams v. Northwest Farm Bureau Insurance Company,* 40 Or.App. 159, 594 P.2d 1256 (1979).

These considerations give rise to the general rules that an insurer's denial of coverage creates an implied waiver of the insurer's right to demand strict compliance by the insured with the policy's notice provisions. The denial excuses the insured from the contractual obligations to submit written notice, proofs of loss and suit papers to the insured. By its own acts, and not by any non-performance of the contract by the insured, the insurer exposes itself to the risk of liability of a judgment against the insured.

USF & G does not dispute these general statements of law. It contends that the telephone conversation was not legally sufficient to bind the company. It contends that in the cases finding an implied waiver there was an unqualified denial of coverage by the company as in *Samson, supra,* where there were even repeated denials. *And see Stubbs v. State Farm Mutual Automobile Insurance Company,* 120 Ga. App. 750, 172 S.E.2d 441 (1969); *Angelo State University v. International Insurance Company of New York,* 491 S.W.2d 700 (Tex.Civ.App.1973).

■ However, "... the question whether or not there has been a denial of liability by the insurer sufficient to effect a waiver is for the jury". 14 Couch on Insurance 2d, *supra,* § 49B:75. *See also S.S. Silberblatt, Inc. v. Travelers Indemnity Company,* 23 A.D.2d 840, 259 N.Y.S.2d 673 (1965); *Aetna Casualty and Surety Company v. Clark,* 427 S.W.2d 649 (Tex.Civ.App.1968). Thus if the agent's statement, made in reference to the specific complaint, that "I no longer had any coverage for Powercraft Homes", and any inferences arising therefrom, could be interpreted to be a denial of coverage, summary judgment is unwarranted. *See Northern Contracting Company v. Allis-Chalmers Corporation,* 117 Ariz. 374, 573 P.2d 65 (1977). Our court must view the facts in a light most favorable to the appellants. *Nicoletti v. Westcor, Inc.,* 131 Ariz. 140, 639 P.2d 330 (1982). Viewed in that light it can be inferred that the agent was saying, "Even though I issued two USF & G policies covering Powercraft in prior years they provide no coverage for this lawsuit."

USF & G also contends that Mr. Claunt's statement to Powercraft's president could not effect a waiver of the notice requirements because of another policy provision:

"Notice to any agent or knowledge possessed by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy signed by an authorized representative of the Company."

In this respect, it is important to note initially that such non-waiver clauses do not generally include the type of implied waiver presented in the case at hand.

"Where an insurance contract contains a nonwaiver clause, that is, a clause which purports to avoid a waiver of any of the conditions of the policy unless the waiver is made in a prescribed manner or form, it is usually held that such clause does not apply to an implied waiver of proofs of loss by a denial of liability, either on the theory that non-waiver policy clauses relate only to matters preceding a loss, or that the nonwaiver clause itself, together with the provisions requiring notice and proofs of loss, is subject to waiver by the statements or conduct of the insurer's agents." 14 Couch on Insurance 2d, *supra,* § 49B:66.

*See Bloom v. Wolfe, supra.* We find *Aetna Insurance Company v. Durbin,* 417 S.W.2d 485 (Tex.Civ.App.1967), cited by appellee, inapposite since it did not involve a possible denial of coverage on behalf of the carrier.

In their briefs the parties also discuss the question of the actual or apparent authority of Mr. Claunts. Whether as an agent or "authorized representative" of the appellee he had either actual or apparent authority to deny coverage is also a question of fact. *See Corral v. Fidelity Bankers Life Insurance Company,* 129 Ariz. 323, 630 P.2d 1055 (App.1981); 4 Couch on Insurance 2d, *supra,* § 26:313. In argument to the trial court, counsel for the appellee said:

"We are here again arguing the same single issue as to whether the phone calls to the authorized agent—and again I have got to emphasize that we are not disputing that Mr. Boots Claunts was the authorized agent for the purposes of this motion—whether that single phone call to him was sufficient to bind the insurance company to provide coverage despite the fact that it has not been disputed that the company never had actual notice, and despite a number of contrary contract provisions."

The authority of the agent was simply not presented to the trial court as an issue and remains a disputed, material fact question.

In its complaint for declaratory judgment, USF & G also alleged that from August 1974 Powercraft built and sold residences to the individual appellants; that said residences were defectively constructed and that in 1978 the individuals filed complaints with the Arizona Registrar of Contractors against Powercraft. Those proceedings are discussed in *Richards v. Powercraft Homes, supra.* The appellants admitted these facts in their answers.

Powercraft therefore contends that even if the phone call gave adequate notice of the lawsuit as required by paragraph 4(b) of the insurance policy that Powercraft failed to comply with paragraph 4(a) thereof. They argue that notice of the "occurrence", allegedly defective construction, should have been given at least as early as 1978 when the complaints were filed with the Registrar of Contractors. This was one year before commencement of the lawsuit. By the terms of the contract this was a condition precedent to any action against the company. We agree that the breach of this contract provision would relieve USF & G of any obligation if the insurance company was prejudiced by the delay. However, it is the insurance company's burden to show actual prejudice before it can rely on these policy provisions. *Camacho v. Gardner,* 104 Ariz. 555, 456 P.2d 925 (1969); *Lindus v. Northern Insurance Company of New York,* 103 Ariz. 160, 438 P.2d 311 (1968). The record contains no showing of prejudice. In its complaint, USF & G alleges that it was deprived "of the opportunity to investigate the claims and to participate

in the defense of said claims to its prejudice." The appellants denied this allegation in their answers. The motion for summary judgment contains no facts, or even factual averments, showing prejudice. These general assertions of prejudice do not present any evidence of prejudice, *Globe Indemnity Company v. Blomfield,* 115 Ariz. 5, 562 P.2d 1372 (App.1977). Delay alone is not a sufficient showing of prejudice. *Massachusetts Bonding and Insurance Company v. Arizona Concrete Company,* 47 Ariz. 420, 56 P.2d 188 (1936).

The appellee's reliance on *State Farm Mutual Insurance Company v. Tarantino,* 114 Ariz. 420, 561 P.2d 744 (1977) is misplaced. There the supreme court found that the notice issue was waived. The opinion states that the only issue was whether the requirement that notice be given "as soon as practicable" was void as against public policy. The supreme court held it was not.

Since disputed, material questions of fact exist, the trial court should not have granted summary judgment and for that reason we must set aside that judgment.

Reversed.

HATHAWAY, J., concurs.

HOWARD, Judge, dissenting.

The majority has taken the language of the insurance agent's affidavit, which is very clear, and twisted it to imply a denial of coverage. In paragraph 5 the agent says he, the *agent* and not the company, "no longer" has any coverage for Powercraft, and that the president should contact another agent who now handles the coverage because he, the *agent,* is no longer doing any business with Powercraft. In other words, he told the president to call somebody else because he was no longer handling Powercraft's business. How do you get a denial of coverage out of that? The trial courts are already crowded enough with meritless cases. They do not need us to create imaginary issues of material fact. If the evidence before us had been the only evidence adduced at trial, the appellee would have been entitled to a directed verdict. In such cases summary judgment is proper. See Wright-Miller-Kane, Federal Practice & Procedure, Vol. 10A, § 2725, p. 104.

I would affirm.