759 P.2d 617

**William G. HOLT and William D. Holt, Plaintiffs–Appellees,**

v.

**UTICA MUTUAL INSURANCE COMPANY, Garnishee Defendant–Appellant.**

**No. 1 CA–CIV 8927.**

Court of Appeals of Arizona, Division 1, Department B.

June 2, 1987.

472

Langerman, Begam, Lewis & Marks by Stanley J. Marks, Phoenix, for plaintiffs-appellees.

Sorenson, Moore, Evens & Burke by Patrick E. Burke, and John S. Schaper, Phoenix, for Garnishee defendant-appellant.

## OPINION

GREER, Judge.

This litigation involves garnishment proceedings in which a judgment creditor sought the proceeds of an errors and omissions policy issued to an insurance broker. The primary issue on appeal is whether *Sandoval v. Chenoweth*, 102 Ariz. 241, 428 P.2d 98 (1967) precludes the insurer from defending against the creditor on grounds that the insured breached his duty to cooperate with the insurer by defaulting in the underlying lawsuit.

William G. Holt paid premiums to Vince Anderson, an insurance agent, to purchase policies of liability insurance on his vehicles. On April 14, 1981, one of Holt's vehicles was involved in a collision with Louis Mendicino. Mendicino suffered personal injuries in the accident and filed a negligence claim against Holt and against Holt's son William D. Holt, the driver of the vehicle. Holt notified Anderson that a lawsuit had been filed and demanded that Anderson notify the responsible insurance carrier to request that it tender a defense and pay any sums found due. Notwithstanding the notice and demand which had been communicated to Anderson, no insurance carrier undertook the Holts' defense. The Holts filed this lawsuit against Vince Anderson, Vince Anderson, Ltd. and Western Surety Co. on June 24, 1982. Their complaint alleged that Anderson accepted premiums from Holt but failed to procure automobile liability coverage for Holt's vehicles, including the vehicle involved in the Mendicino accident. The Holts' request for relief, included requests for reimbursement for any loss incurred in the Mendicino suit, an accounting for premiums paid and attorney's fees.

Anderson was covered by an errors and omissions policy issued by Utica Mutual Insurance Company (Utica) at the time of the occurrences which were the subject of the Holts' complaint. Counsel for the Holts sent a letter to Utica indicating that a suit had been filed against Anderson and requesting Utica to undertake the defense of the Holts in the Mendicino action. Utica did not respond to this request.

On September 7, 1982, a default judgment for $45,000 was entered in favor of Mendicino and against the Holts. All parties appear to agree that a covenant not to execute was entered into by Mendicino and the Holts in connection with the entry of judgment. However, the record does not contain any such covenant. Similarly, it is not clear whether Mendicino acquired any claims that the Holts might have against Anderson or Anderson's errors and omissions insurer. If the Holts have no liability to satisfy the Mendicino judgment, questions arise concerning the real parties in interest in this litigation. Nevertheless, our disposition of this appeal makes it unnecessary to address these issues.

In July of 1983, Anderson acknowledged personal service of the summons and complaint and defaulted in the action. Neither Anderson nor the Holts advised Utica that Anderson had been served; nor did Anderson inform Utica that he had consented to the entry of default against himself and Vincent Anderson, Ltd. An affidavit of Anderson's default was filed on August 25, 1983 and a default judgment for $45,045 was entered in favor of the Holts on January 3, 1984.

The Holt claim against Western Surety was resolved by stipulation and order of dismissal and Western is not involved in this appeal.

On February 19, 1985, the Holts obtained a writ of garnishment which was served upon Utica. Utica answered, denying any indebtedness to Anderson. The Holts filed an objection to the answer contending that Anderson was insured by Utica against the Holts' claims in this action under an errors and omissions policy and obtained an order for the garnishee to appear.

The Holts moved for summary judgment and Utica filed a cross-motion for summary judgment, contending that Anderson was not covered by the Utica policy because he had failed to comply with the conditions of the policy requiring cooperation in the event of a lawsuit. Utica alleged that Anderson had failed to notify it of the service of the Holt complaint, had retained independent counsel, had not responded to the complaint, and had consented to the entry of a default judgment. Utica also asserted that in 1984 it first learned through correspondence from the Holts' counsel that a default judgment had been entered against Anderson. Utica argued that it owed no coverage to Anderson and therefore, it could not be found liable to the Holts.[1]

---

1. The policy provided in part:

6. DEFENSE, SUPPLEMENTS, SUPPLEMENTARY PAYMENTS:

On January 3, 1986, the Holts' motion for summary judgment was granted and Utica's cross-motion was denied. Judgment against Utica was entered on February 7, 1986 awarding the Holts $45,045 plus interest. This appeal followed.

■ The Holts argued below that although Utica could raise the issue of its insured's non-compliance by motion to set aside the underlying judgment, it could not raise the issue in a garnishment proceeding. They also contended that the defenses that Utica had against its insured could not defeat the claims of an injured third party. Both arguments were based on their interpretation of *Sandoval v. Chenoweth* and its applicability to an errors and omissions insurance policy. We find nothing in general garnishment law that precludes Utica from raising that issue in a garnishment proceeding. We also conclude that *Sandoval* does not govern this case. Accordingly we reverse summary judgment in favor of the Holts.

Most jurisdictions hold that in the absence of statutory provisions to the contrary, the insured's breach of policy conditions generally will preclude an injured person from recovering against the insurer. *See generally* 8 J. Appleman, *Insurance Law and Practice* § 4815 (1981). Some jurisdictions have limited such defenses against an injured third party to breaches that are material, reasonably necessary to protect the insurer or breaches which have caused prejudice to the insurer. *See, e.g., National Semiconductor Corp. v. Allendale Mut. Ins. Co.*, 549 F.Supp. 1195 (D.C. Conn.1982); *Sly v. American Indem. Co.*, 127 Cal.App. 202, 15 P.2d 522 (1932); *Dietz v. Hardware Dealers Mut. Fire Ins. Co.*, 88 Wis.2d 496, 276 N.W.2d 808 (1979). *See generally* 8 J. Appleman, *supra.*

*Sandoval* involved an insured who notified his automobile liability carrier of an accident, but did not advise the insurer that suit had been brought. A default judgment was entered, and a garnishment was obtained against the carrier several months later. The Arizona Supreme Court held that the carrier could not assert the insured's breach of the policy clause requiring that notification of any lawsuit be given to the insurer. The court cited A.R.S. § 28–1170 of the Financial Responsibility Law, which provides that no violation of a motor vehicle liability policy "shall defeat or void the policy." 102 Ariz. at 244, 428 P.2d at 101. Accordingly, the insurer was not allowed to invoke the policy defense in the garnishment proceedings.

Unlike *Sandoval*, the instant case does not involve a motor vehicle liability policy governed by either the extensive legislative provisions of A.R.S. § 28–1101 *et seq.*, or the related public policy considerations which mandate coverage other than those specified by contract. The determination of coverage in *Sandoval* was based upon a statute expressly providing that no violation of the conditions of the policy would defeat coverage. *Sandoval* does not purport to be a statement of general insurance law.

While *Sandoval* provides that the insurer's remedy was to move to set aside the default judgment rather than to raise a defense in the garnishment proceedings, these statements were made in the context of the applicability of A.R.S. § 28–1170 to the available defenses.

---

As respects such insurance as is accorded by the terms of this policy, the Company shall (a) defend in the insured's name and behalf any suit against the insured alleging such negligent act, error or omission and seeking damages on a count thereof even if such suit is groundless, false, or fraudulent; but the Company shall have the right to make such investigation and negotiation of any claim or suit as may be deemed expedient by the Company. The insured shall cooperate with the Company and at the Company's request shall attend hearings and trials and shall assist in effecting settlements, procuring and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits and defense thereof. The insured shall not, except at his own cost, make any admission of liability, voluntarily make any payment, assume any obligation or incur any expenses without the written consent of the Company. The Company reserves a right to compromise or contest any and all claims on behalf of and in the name of the insured.

Absent statutory provisions to the contrary, it is well established in Arizona that in a garnishment proceeding a garnishor cannot obtain rights against the garnishee any greater than the rights held by the judgment debtor against the garnishee. *See, e.g., Mid–State Elec. Supply Co. v. Arizona Title Ins. & Trust Co.*, 105 Ariz. 321, 323–24, 464 P.2d 604, 606–07 (1970); *Webster v. USLIFE Title Co.*, 123 Ariz. 130, 132, 598 P.2d 108, 110 (App.1979).

In *Kepner v. Western Fire Ins. Co.*, 109 Ariz. 329, 509 P.2d 222 (1973), our supreme court stated:

> Where there are facts which might exclude coverage, the insurer cannot always defend with complete fidelity. There must be a proceeding at which the insurer and the insured are represented by counsel of their own choice to fight out their differences. Such a testing of the insurer's liability may take the form of a declaratory judgment brought in advance of the third party's action or proceedings on garnishment following the trial of the third party's action as in the instant case.

109 Ariz. at 332, 509 P.2d at 225.

Nevertheless, the Holts argue that Utica should be treated as though it were an automobile liability insurer because it provided errors and omissions coverage to an individual who was providing automobile liability insurance. They argue that unless we treat the errors and omissions carrier as an automobile liability insurer, injustice will be done because Holt will remain uninsured and Mendicino will be without any remedy.

First, we note that based on the record before us, we cannot determine whether Mendicino has been left without a remedy. Mendicino may have had uninsured motorist coverage. Of greater concern is the Holts' attempt to expand the holding in *Sandoval v. Chenoweth* to apply to any injured party rather than parties falling within the contemplation of the Financial Responsibility Act.

It is undisputed that Utica did *not* issue an automobile liability insurance policy to anyone involved in this litigation. Were we to extend Utica's liability, we would be imposing a risk which Utica did not undertake when it entered into a contract with Anderson. We find no statutory basis to expand Utica's contractual obligations; nor are we persuaded that public policy considerations would support an imposition of such a risk. Accordingly, we reverse summary judgment entered in favor of the Holts.

Utica has argued that in addition to reversing summary judgment in favor of the Holts, this court should grant summary judgment in its favor. It argues that there are no issues of fact which would preclude this court from determining that Anderson failed to comply with the conditions of the errors and omissions policy and that this court can determine as a matter of law that Utica is not obligated to provide coverage to Anderson and thereby to the Holts.

The Holts argue that even if Utica should have been permitted to raise policy defenses, the trial court properly denied Utica's cross-motion for summary judgment in the garnishment proceedings because (1) whether Utica denied coverage to Anderson is an issue of material fact, and (2) Utica failed to prove the necessary elements of breach of the cooperation clause in its policy.

Arizona courts follow the general rule that once an insurer has denied coverage, it cannot thereafter raise a defense of the insured's failure to comply with notice provisions of the insurance policy. *United States Fid. & Guar. Co. v. Powercraft Homes, Inc.*, 141 Ariz. 71, 74–75, 685 P.2d 136, 139–40 (App.1984); *American Eagle Fire Ins. Co. v. Van Denburgh*, 76 Ariz. 1, 4, 257 P.2d 856, 858 (1953). Generally, whether there has been a denial of liability by the insurer sufficient to affect a waiver of the insurer's right to defend on the ground of non-compliance with the policy is a question for the trier-of-fact. *Powercraft Homes, Inc., id.* 141 Ariz. at 75, 685 P.2d at 140. Viewing the record in a light most favorable to the Holts, we must determine whether the Holts presented any evidence to raise the issue of Utica's denial of coverage. *See Wagenseller v. Scottsdale*

*Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025 (1985).

■ The Holts rely on Utica's knowledge of the Holts' pending lawsuit against Anderson and subsequent inaction to infer denial of coverage. On June 24, 1982 a copy of the complaint had been sent to Utica along with a cover letter from the Holts' attorney indicating that the lawsuit had been filed. Further, prior to filing the complaint, the Holts' attorney in the *Mendicino v. Holt* litigation had several telephone conversations with a Utica representative asking Utica to tender a defense in that lawsuit. They note that Utica refused to defend in the Mendicino litigation.

The fact that Utica did not agree to provide coverage to the *Holts* in connection with the Mendicino litigation cannot be construed as a denial of coverage to Anderson. While Utica knew that a lawsuit had been filed against Anderson, it did not receive notice from Anderson that he had been served nor did Anderson ask Utica to provide a defense. It is apparently the Holts' position that Utica should have contacted Anderson after it learned that litigation had been filed and initiated an offer to provide a defense, and that its failure to do so can be construed as a denial of coverage to Anderson. The Holts cite to no authority, nor have we found any authority in support of this contention.

When the Holts' attorney called Utica and asked it to tender a defense at a time that Anderson had not been served, he was asking Utica to compromise its insured's right to proper service by asking Utica to participate in the Mendicino litigation and to compromise any defenses Anderson might have had. We note also that Anderson was not served until more than a year after the *Holt v. Anderson* lawsuit was filed. Neither Anderson nor the Holts' counsel informed Utica that Anderson had been served.

■ In order to defeat a motion for summary judgment, the opposing party must show that evidence is available that would justify a trial. *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 561, 667 P.2d 750, 755 (App.1983). To establish a denial of cover-age, there must be some evidence that the insurer communicated to the insured its intent not to defend or pay a claim. *Cf. Powercraft Homes, Inc., id.* 141 Ariz. at 75, 685 P.2d at 140. Until Anderson was served, Utica was not obligated to file an answer on his behalf or to otherwise defend. *Cf. Beal v. State Farm Mut. Auto. Ins. Co.*, 151 Ariz. 514, 519–21, 729 P.2d 318, 323–25 (Ariz.Ct.App.1986). There is no evidence of any communication by Utica to Anderson with respect to coverage under the errors and omissions policy. It is undisputed that there was no explicit refusal to defend. Utica's knowledge that a complaint had been filed and its failure to participate in the Mendicino action does not constitute a refusal to defend Anderson. *Cf. Manny v. Estate of Anderson*, 117 Ariz. 548, 574 P.2d 36 (App.1977). We find no evidence in the record from which a trier-of-fact could have concluded that Utica denied coverage to Anderson.

■ The Holts also argue that Utica failed to meet its burden of showing that it was substantially prejudiced by Anderson's lack of cooperation. They point out that an insured's violation of a cooperation clause constitutes a defense to the insurer only where it can be shown that the insurer was prejudiced by such violation. *Globe Indem. Co. v. Blomfield*, 115 Ariz. 5, 7, 562 P.2d 1372, 1374 (App.1977).

This case involves more than the failure of an insured to assist in the defense of a case. Rather, it involves affirmative actions taken by an insured to impose liability upon the insurer by stipulating to a default judgment before the insurer knew that the insured had been served. Whether prejudice results from the insured's failure to cooperate is generally a question of fact. However, where it is undisputed that an insured has failed to advise an insurer of service of a lawsuit and affirmatively acted to allow entry of default, prejudice automatically follows from the denial of any opportunity for an insurer to defend against a claim. *Anderson v. Slayton*, 662 S.W.2d 575 (Mo.App.1983); *Weaver v. Hartford Acc. & Indem. Co.*, 570 S.W.2d 367 (Tex.1978). *Cf. Arizona Prop. & Cas.*

*Ins. Guar. Fund v. Helme,* 153 Ariz. 123, 735 P.2d 445 (Ariz.App.1986); *aff'd,* 153 Ariz. 129, 735 P.2d 451 (1987); *Dairyland Ins. Co. v. Marez,* 42 Colo.App. 536, 601 P.2d 353 (1979).

The undisputed facts establish Anderson's violation of the cooperation clause of the Utica policy and prejudice to Utica as a matter of law.

Denial of summary judgment is generally neither appealable nor subject to review on appeal from a final judgment in the same matter. *Fleitz v. Van Westrienen,* 114 Ariz. 246, 248–49, 560 P.2d 430, 432–33 (App.1977). However, although no appeal is authorized from an order denying a motion for summary judgment, it is appropriate in a case where the motion can be decided as a matter of law to rule and direct that judgment be entered accordingly by the trial court. *Roosevelt Sav. Bank v. State Farm Fire & Cas. Co.,* 27 Ariz. App. 522, 526, 556 P.2d 823, 827 (App.1976).

The parties' cross-motions for summary judgment address the identical legal issue, i.e., the application of *Sandoval* to this litigation. The Holts argue that the issues raised in Utica's cross-motion for summary judgment raised additional issues of fact with respect to whether Anderson complied with policy provisions. However, they point to no evidence in the record to dispute Anderson's failure to notify Utica that he had been served and his default in the underlying action. Further, as previously discussed, they presented no evidence of Utica's denial of coverage which would relieve Anderson of his duty to cooperate and notify Utica of the lawsuit. We conclude that it is therefore appropriate to rule on Utica's cross-motion for summary judgment.

Summary judgment in favor of the Holts is reversed and this matter is remanded to the trial court with directions to enter judgment in favor of Utica.

Utica has requested an award of attorney's fees on appeal pursuant to Rule 21(c), Arizona Rules of Civil Appellate Procedure and A.R.S. § 12–341.01. It is undisputed that this litigation could not have arisen but for Utica's contract with Anderson. *See Ford v. Revlon, Inc.,* 153 Ariz. 38, 44–45, 734 P.2d 580, 586–87 (1987). Accordingly, we grant Utica's request for attorney's fees in an amount to be determined following a submission of a statement of costs in compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure and this court's opinion in *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983).

JACOBSON, P.J., and HAIRE, J., concur.