759 P.2d 623

William G. HOLT and William D. Holt, Plaintiffs/Appellees,

v.

UTICA MUTUAL INSURANCE COMPANY, Garnishee Defendant/Appellant.

No. CV–87–0273–PR.

Supreme Court of Arizona, En banc.

June 30, 1988.

Langerman, Begam, Lewis and Marks by Stanley J. Marks and Neil J. Harrington, Phoenix, for plaintiffs/appellees.

Sorenson, Moore, Evens & Burke by Patrick E. Burke and John S. Schaper, Phoenix, for defendant/appellant.

FELDMAN, Vice Chief Justice.

This petition for review asks us to determine whether there are genuine issues of material fact precluding summary judgment on insurance questions of duty to defend, breach of a cooperation clause and substantial prejudice to an insurer. We granted review to clarify several matters of statewide importance. Rule 23, Ariz.R. Civ.App.P., 17A A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTUAL AND PROCEDURAL SUMMARY

The operative facts are undisputed. William G. Holt paid insurance agent Vince Anderson for liability insurance on Holt's automobiles. Anderson accepted the money but failed to either procure the requested coverage or tell Holt that the policy had not been issued. At the time, Anderson was covered for his professional errors and omissions as an insurance agent under a policy issued by Utica Mutual Insurance Company (Utica).

Subsequently, while driving the family car, Holt's son was involved in an accident with Louis Mendicino. Mendicino was injured in the mishap and sued father and son for damages. Holt notified Anderson that a lawsuit had been filed and demanded that the responsible insurance carrier tender a defense and cover any losses.

Of course, no automobile insurer came forward to defend the Holts. On June 24, 1982, the Holts sued Anderson for negligently failing to obtain liability coverage for the family cars. They sought indemnity for any loss they might sustain in the Mendicino suit, attorney's fees and an accounting for premiums paid. Their attorney spoke with Utica representatives and then wrote Utica, confirming that the Holts had sued Anderson. He enclosed a copy of the Holts' complaint against Anderson, and asked Utica to defend the Holts in the Mendicino action. Utica did not respond or make any appearance in the Mendicino case.

On September 7, 1982, the superior court entered a default judgment for $45,000 plus costs in favor of Mendicino and against the Holts. This was apparently the result of some type of "Damron agreement" between Mendicino and the Holts. *See Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969) (upholding assignment to plaintiffs of insured's claim against insurer for failure to defend liability lawsuit). In July 1983, Anderson acknowledged personal service of the summons and complaint in *Holt v. Anderson* and agreed to the entry of judgment in favor of the Holts. Neither Anderson nor the Holts advised Utica that

Anderson had accepted service and consented to judgment. The superior court entered a default judgment in favor of the Holts and against Anderson on January 3, 1984. The amount of the judgment was $45,045, the exact amount of Mendicino's judgment against the Holts. On January 11, 1984 the Holts' attorney sent a letter to Utica informing Utica of the default judgment. Utica still took no action.

The Holts served a writ of garnishment on Utica on February 19, 1985, claiming that Utica was indebted to Anderson as an insurer or indemnitor. After Utica answered the writ denying any indebtedness, the Holts moved for summary judgment, claiming that Utica's only "defense" was Anderson's supposed breach of the cooperation clause. The breach consisted of Anderson's failure to notify Utica of the proposed entry of default judgment in favor of the Holts. According to the Holts, this defense was untenable, primarily because it contradicted the holding of *Sandoval v. Chenoweth*, 102 Ariz. 241, 428 P.2d 98 (1967) (insurance coverage could not be denied based on noncompliance with a cooperation clause).

Utica responded and filed a cross-motion for summary judgment, asserting that Anderson's noncooperation abrogated Utica's duty of indemnification. Denying the relevance of *Sandoval*, Utica alleged that Anderson had breached his obligations to his carrier by not notifying Utica of actual service of the Holts' complaint nor asking Utica to defend him. Instead, Anderson retained separate counsel and then gave his written consent to the entry of a default judgment, all in "apparent collusion" with the Holts.

The trial court granted the Holts' motion for summary judgment, denied Utica's cross-motion and entered judgment against Utica for $45,045 plus interest. Utica appealed.

## BEFORE THE COURT OF APPEALS

The court of appeals transposed the results reached below. *Holt v. Utica Mutual Insurance Co.*, 157 Ariz. 471, 759 P.2d 617 (Ct.App.1987). The court reversed the Holts' summary judgment, reasoning that Utica had not breached its obligations to Anderson. *Id.* at 476, 759 P.2d at 622. On the contrary, the court found that Anderson had violated the cooperation clause by failing to advise Utica when he ultimately accepted service of process and by allowing entry of a default judgment. *Id.* at 476–477, 759 P.2d at 622–623. The court held that Utica was prejudiced as a matter of law by Anderson's conduct, giving Utica a complete defense under the cooperation clause of the contract. *Id.* at 477, 759 P.2d at 623. The court thus concluded that the trial court had erred in granting summary judgment to the Holts. The opinion went even further: although it conceded that the trial court's order denying Utica's motion for summary judgment was "generally neither appealable nor subject to review on appeal from a final judgment," the court of appeals concluded as a matter of law that Utica's cross-motion for summary judgment could be granted. Slip op. at 13. The court of appeals therefore not only reversed the trial court's judgment in favor of the Holts, but remanded with directions to enter judgment in favor of Utica. We then granted the Holts' petition for review.

## THE ISSUES

In essence, the Holts contend that there are three genuine issues of material fact precluding summary judgment in favor of Utica.[1] Rule 56(c), Ariz.R.Civ.P., 16 A.R.S.; *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 142, 639 P.2d 330, 332 (1982). These issues are:

1. Whether Utica breached its contractual duty to defend Anderson.

---

**1.** The Holts have not sought review of the court of appeals' ruling that Utica could challenge the default judgment against Anderson at the garnishment hearing. *See* Annotation, *Liability insurer's right to open or set aside, or contest matters relating to merits of, judgment against* insured, entered in action in which insurer did not appear or defend, 27 A.L.R.3d 350 (1969). We therefore do not reach that issue. *See also Carpenter v. Superior Court*, 101 Ariz. 565, 422 P.2d 129 (1966).

2. Whether Anderson violated the cooperation clause.

3. Whether Anderson's conduct substantially prejudiced Utica.

We must consider a fourth issue argued in the court of appeals before we can resolve any of the issues raised in this court. In the trial court and the court of appeals, the Holts argued that they were entitled to summary judgment even if Anderson had breached the cooperation clause of the Utica policy because under Arizona law no breach of a cooperation clause by an insured will defeat or void an insurance policy. We first consider this threshold question.

## DISCUSSION

### A. Was Breach of the Cooperation Clause a Defense Available to Utica?

■ We agree with the court of appeals that the *Sandoval* doctrine is inapplicable and that Utica could raise Anderson's breach of the cooperation clause as a defense. *See* 157 Ariz. at 474–475, 759 P.2d at 620–621. The *Sandoval* concept that breach of policy provisions is not a valid defense to an action on an insurance policy is based on A.R.S. § 28–1170(F)(1), a portion of Arizona's financial responsibility laws covering motor vehicle liability insurance policies. *See* A.R.S. § 28–1101 *et seq.* Thus, *Sandoval* held that a motor vehicle liability carrier could not assert its insured's breach of the cooperation clause as a defense. We do not recede from the reasoning of *Sandoval,* but decline to apply it to anything other than the specific type of policy covered by the statute. Professional errors and omissions coverage for an insurance agent selling motor vehicle liability policies is not the equivalent of a motor vehicle policy and does not come within the bounds of either the statute or *Sandoval.*

Thus, an insured's breach of policy conditions, including the cooperation clause, might be a defense to an action on the policy. *See* 8 J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4815 (1981). Arizona has recognized this principle in previous cases. *See, e.g., Arizona Property & Casualty Insurance Guaranty Fund v. Helme,* 153 Ariz. 129, 136–37, 735 P.2d 451, 458–59 (1987); *Globe Indemnity Co. v. Blomfield,* 115 Ariz. 5, 8, 562 P.2d 1372, 1373 (App.1977). However, to constitute a valid defense, the breach must be material, violating a provision reasonably necessary for the protection of the insurer, and it must substantially prejudice the insurer. 8 J. APPLEMAN, *supra.*

■ Under the present facts, therefore, Utica could raise its insured's breach of the cooperation clause as a possible defense to an action on the policy. The trial court's order of January 3, 1986, granting the Holts' motion for summary judgment, does not specify the grounds upon which it is based. Given the arguments made in the motion, it is possible that the trial court granted summary judgment in favor of the Holts on the theory that a cooperation clause defense was unavailable to Utica as a matter of law. The order does indicate that the trial court took the motions under advisement and "after review of the pleadings as well as *Sandoval v. Chenoweth,*" granted the Holts' motion for summary judgment. *See* Minute Entry dated Jan. 3, 1986. Based upon the court's implicit reliance on *Sandoval* and the lack of any other articulated explanation for the court's ruling, we must approve the court of appeals' reversal of the trial court's summary judgment in favor of the Holts.

We therefore turn to the propriety of the court of appeals' remand of the case with instructions that the trial court grant Utica's motion for summary judgment.

### B. Was Utica Entitled to Summary Judgment?

#### 1. *Utica's Breach of the Duty to Defend*

■ Before we can decide whether Anderson breached his duty to cooperate, we must decide whether such a duty existed. The policy clause in question requires the insured to cooperate with Utica in the defense of any liability lawsuit. Ordinarily, Anderson's consent to the entry of judg-

ment would be a breach of the clause. *See Helme*, 153 Ariz. at 136–37, 735 P.2d at 458–59. However, an insurance policy is "governed by the basic contract law principle that if one party to a contract breaches the agreement, the other party is no longer obligated to perform his or her contractual obligations." *Id.*

Utica had a contractual duty to defend Anderson against the Holts' errors and omissions claim. If Utica breached that duty, Anderson had the right to fend for himself in resolving the Holts' lawsuit against him. *See Helme*, 153 Ariz. at 137, 735 P.2d at 459. The court of appeals concluded as a matter of law that Utica had not breached its duty to defend, because Anderson never asked for Utica's help and never sent the company a copy of the complaint.

In general, the trier of fact must determine whether a liability insurer has breached the duty to defend. *See, e.g., United States Fidelity & Guaranty Co. v. Powercraft Homes, Inc.*, 141 Ariz. 71, 75, 685 P.2d 136, 140 (App.1984). Courts should not grant summary judgment unless all reasonable inferences from the established facts exclude the existence of genuine issues. *Tribe v. Shell Oil Co., Inc.*, 133 Ariz. 517, 519, 652 P.2d 1040, 1042 (1982). The issue here is whether Utica's handling of the Holts' claim was an actual or anticipatory breach of Utica's duty to defend Anderson.

The facts before us are unusual. Claims of breach of the duty to defend normally arise after the insured asks the insurer to defend and the company declines to act. *See generally* Annotation, *Liability insurer's waiver of right, or estoppel, to set up breach of co-operation clause*, 30 A.L. R.4th 620 (1984). In this case, Utica did not explicitly deny coverage or directly refuse to defend when the Holts' attorney sent Utica a copy of the complaint against Anderson. Instead, Utica did nothing; it did not investigate, negotiate or even contact its insured about the lawsuit. When, on January 11, 1984, Utica was finally informed of the Holts' default judgment against Anderson, Utica still made no effort to discuss the situation with Anderson or to set aside the judgment.

The cross-motions for summary judgment leave many factual issues unanswered. An affidavit attached to the Holts' motion establishes that the lawyer defending the Holts against Mendicino's personal injury damage claim had several discussions with Utica's representatives. The affidavit states that the lawyer described the situation, explained that Anderson had improperly failed to obtain insurance coverage for the Holts, stated that the Holts could not afford to defend against Mendicino, and suggested that Utica could mitigate its own damages and obviate the necessity of the Holts' suing Anderson if it simply defended the Holts in the personal injury action. The affidavit states that Utica never offered a defense in Mendicino's action.

Nor do Utica's motion papers explain why Utica did nothing in the Anderson action. The motion papers show that the Holts sued Anderson after Mendicino took judgment against them. Before the Holts served process on Anderson, their attorney sent a copy of the complaint to Utica with a cover letter explaining why the Holts had sued Utica's insured. Utica does not contend that it failed to receive these papers. An affidavit from Utica's senior claims supervisor states only that Utica "did not receive *from Vincent Anderson,* any written or oral *notice that he had been served*" in the action (emphasis added). Utica does not claim that it informed Anderson that Utica would appear in the action only after personal service on him, or even that it would defend at all. Utica does not contend that it ever contacted Anderson after it learned that suit had been filed against him, nor does it explain why it failed to do so. In the pleadings before the trial court, Utica's lawyers claimed that the reason for its inaction was that Utica was preserving Anderson's right to be personally and formally served with process.

We do not find this argument so persuasive that, as a matter of law, it justifies Utica's inaction. Even absent an ex-

press refusal to defend, an unreasonable delay in taking action after receiving notice of a claim may constitute a breach of the duty to defend. *See, e.g., Otteman v. Interstate Fire & Casualty Co.,* 172 Neb. 574, 111 N.W.2d 97 (1961) (delay of insurer in responding to claim amounted to a denial of coverage); *see also Municipality of San Juan v. Great American Insurance Co.,* 813 F.2d 520 (1st Cir.1987) (although insured failed to forward suit papers, insurer's silence and failure to act, despite independent knowledge of the liability lawsuit, amounted to a rejection of coverage). In the present case, Utica had received a copy of a complaint against its insured, yet it did nothing at all. *See Carpenter v. Superior Court,* 101 Ariz. 565, 570, 422 P.2d 129, 134 (1966) ("there is a duty to exercise reasonable diligence to secure the assistance of the insured, including a request for such assistance and reasonable efforts in attempting to locate him"). *See also* 45 C.J. S. *Insurance* § 937(b) (1946).

Utica's inaction may have been a repudiation of a present duty to protect its client or it may have been an anticipatory breach of the future obligation to defend Anderson. *See Helme, supra;* 17 Am.Jur. 2d *Contracts* §§ 443, 448 (1964). On the other hand, Utica's laissez-faire attitude might merely reflect corporate ineptitude. We cannot decide as a matter of law whether Utica's conduct could reasonably have been taken as a manifestation that it had no intent to perform under the terms of its liability contract with Anderson. *See Diamos v. Hirsch,* 91 Ariz. 304, 307, 372 P.2d 76, 78 (1962). This is especially true in light of Utica's continuing inertia even after it learned that the Holts had obtained a default judgment against Anderson. For over a year *after* that point, Utica *still* did nothing. From this fact one might infer that Utica never had any interest in defending Anderson. The possible inferences from Utica's behavior must be resolved by the trier of fact at trial. *See, e.g., Northern Contracting Co. v. Allis–Chalmers Corp.,* 117 Ariz. 374, 376, 573 P.2d 65, 67 (1977). The resolution of these inferences regarding Utica's alleged breach of duty affects the question of Anderson's alleged breach of the cooperation clause.

## 2. *Anderson's Violation of the Cooperation Clause*

■ The Utica liability insurance contract contained a standard cooperation clause, which provided:

> The insured shall cooperate with [Utica] and at [Utica's] request ... shall assist ... in the conduct of suits and defense thereof. The insured shall not, except at his own cost, make any admission of liability ... assume any obligation or incur any expenses without the written consent of [Utica].

Utica argues that Anderson breached this clause by failing to notify the company when he received the Holts' complaint, by failing to ask Utica to defend him, by retaining separate counsel and by giving his written consent to entry of a default judgment. The Holts counter that Anderson rightfully took steps to protect himself when Utica breached the contract by declining to defend him.

An insurance cooperation clause protects the insurer's right to a fair adjudication of the insured's liability, preventing collusion between the injured person and the insured. 8 J. APPLEMAN, *supra* § 4771, at 213. Normally, if an insured breaches the cooperation clause, a prejudiced insurer is relieved from liability under the insurance policy. *See generally* Annotation, *Liability insurance: insured's submission to service of process as breach of co-operation clause,* 66 A.L.R.2d 1238 (1959); Annotation, *Insured's co-operation with claimant in establishing valid claim against insurer as breach of co-operation clause,* 8 A.L.R.3d 1345 (1966). However, if the insurance company first breaches its duty to defend the insured, "the insured is no longer fully bound by the cooperation clause." *Helme,* 153 Ariz. at 137, 735 P.2d at 459. The insured may take reasonable steps to protect his or her interests. Depending on the circumstances, the insured may enter into a Damron agreement, retain separate legal assistance, decline to communicate with the insurer and even agree

to the entry of a default judgment. *Id.;* *see also Damron, supra.*

Whether an insured has justifiably contravened the cooperation clause is an intensely factual question. The determination depends first upon a breach of the insurer's duty to defend, and second upon the propriety of the insured's consequent prophylactic measures. *See Helme,* 153 Ariz. at 138, 735 P.2d at 460.

As noted earlier, in the present case there are genuine issues of material fact whether Utica breached its duty to defend. Further, it is unclear whether Anderson's actions were a properly measured response to Utica's inaction.[2] That question must be resolved by factual inquiry, and not by legal induction. Based on the record before us, summary judgment in favor of either party on the issue of breach of the cooperation clause was improper.

3. *Substantial Prejudice to the Insurer*

■ Even if an insured breaches a cooperation clause, the insurer may not use that fact as a defense unless the breach has caused substantial prejudice. *See generally* Annotation, *Modern status of rules requiring liability insurer to show prejudice to escape liability because of insured's failure or delay in giving notice of accident or claim, or in forwarding suit papers,* 32 A.L.R.4th 141 (1984).

The court of appeals concluded that Anderson's alleged breach of the cooperation clause had caused substantial prejudice to Utica as a matter of law. 157 Ariz. at 477, 759 P.2d at 623. In Arizona, however, whether an insurer has suffered substantial prejudice as the result of a breach of the cooperation clause is generally a factual question. *See Blomfield,* 115 Ariz. at 7, 562 P.2d at 1374. It is the insurer's burden to show actual prejudice before it can avoid liability under the insurance poli-

cy. *See Powercraft Homes,* 141 Ariz. 71 at 76, 685 P.2d 136 at 141 (App.1984).

■ The record on this question also is too sparse to permit adjudication of this case as a matter of law. Anderson failed to provide the Holts with the insurance policy which they had purchased. As a result, the Holts were uninsured against Mendicino's claim. Mendicino obtained a default judgment against the Holts in the amount of $45,000, plus $45 court costs. Utica had an opportunity to appear for the Holts in that action to protect its interests and mitigate damages. Utica apparently chose not to do so. It is not now in a position to make a collateral attack on the Mendicino judgment against the Holts. *Blomfield, supra.*

■ Thus, if Anderson was negligent in failing to provide the Holts with the promised policy, then he is apparently liable to the Holts in the sum of $45,045, the exact amount of the Holts' consent judgment against Anderson. Therefore, even assuming that Anderson breached the cooperation clause by failing to notify Utica that he had actually been served and by allowing the Holts to take judgment, this record does not show how Utica suffered any prejudice. We disagree that "prejudice automatically follows from the denial" of an opportunity to defend against a claim. 157 Ariz. at 477, 759 P.2d at 623. First, the statement is factually inapposite here because Utica had a timely opportunity to defend. Second, there may have been no defense against the claim. These issues must be resolved by the trier of fact and not by an appellate tribunal.

## CONCLUSION

The three factual issues posed by the Holts must be resolved at the trial court level. The record does not allow their disposition by summary judgment. We vacate the court of appeals' opinion and re-

---

**2.** We note that the record contains no explanation of why neither the Holts' nor Anderson's attorney apparently made any attempt to contact Utica and ascertain its position between the date a copy of summons and complaint in *Holt v. Anderson* was sent to the insurer and the date

on which the insurer finally learned of entry of the default judgment. Utica argued that there had been obvious collusion to deprive the company of its right to an adjudication of its insured's liability. Resolution of that issue must also await a fuller exposition of the facts.

verse the trial court's summary judgment. We remand for further proceedings consistent with this opinion.

GORDON, C.J., and CAMERON, HOLOHAN and MOELLER, JJ., concur.